600 A.2d 626

**PITTSBURGH PRESS COMPANY and CNA Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (LEONARD J. TARESS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 16, 1991.

Decided Nov. 27, 1991.

J. Lawson Johnston, for petitioners.

Ernest B. Orsatti, for respondent.

Before COLINS and BYER, JJ., and BARBIERI, Senior Judge.

COLINS, Judge.

Pittsburgh Press Company and CNA Insurance Company (petitioners) have petitioned for review of the decision of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of the referee granting workmen's compensation benefits to Leonard J. Taress (claimant).

Claimant filed a petition for compensation on January 2, 1987, seeking benefits for the complete loss of hearing in both ears pursuant to Section 306(c)(8) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8). Claimant initially alleged that the injury occurred as of September 11, 1986, but later, according to the referee, amended his petition to reflect an injury date of November 26, 1985.

At the time this action was filed, claimant had been employed as a pressman for the Pittsburgh Press for approximately five years. Previously, he was a pressman for the Cleveland Press for approximately twenty years. He testified that he noticed a loss of hearing approximately three years prior to the referee's hearing on September 9, 1987. Claimant was not examined, however, until Novem-

ber 26, 1985, when Stephen M. Froman, M.D., (Dr. Froman) performed a complete otolaryngologic examination of claimant, made x-ray images of his internal auditory canals and mastoids, and had an audiologist administer complete audiologic testing.

Claimant testified that when he started working at the Pittsburgh Press, he was going home to Ohio on weekends and that his wife and family there began to complain that he adjusted the volume on the television too loudly. Claimant also stated that he had to ask people to repeat themselves, although he often "faked it," because it sounds "dumb" to continually ask people to repeat what they have said. According to claimant, at the hearing, he was straining to hear petitioners' counsel. He also stated that he has a hard time hearing people speak when he is riding in a car, and he has a hard time hearing in a bar where there is a lot of noise. Generally, if he sits across from a person, he can understand that person.

Dr. Froman examined claimant on November 26, 1985. His physical examination found no abnormalities, but the audiologic testing performed by an audiologist indicated that claimant's hearing "is essentially normal in the low frequencies, followed by a moderate neurosensory hearing loss or nerve loss in the mid to high frequencies and he has impaired discrimination ability in both ears." Dr. Froman stated that, in his opinion, within a reasonable degree of medical certainty, claimant suffered the complete loss of use of hearing in both ears for all practical intents and purposes. He also testified, within a reasonable degree of medical certainty, that claimant's loss of use of hearing "resulted from his total and cumulative exposure to loud noise during his years of employment at the Pittsburgh Press and Cleveland Press."

Claimant was examined by petitioners' expert, Barry Hirsch, M.D., (Dr. Hirsch) on May 18, 1987. Upon physical examination, Dr. Hirsch found that claimant was normal except for a crooked nose and a red throat. An audiologist for Dr. Hirsch also performed audiologic testing on claim-

ant. Dr. Hirsch testified that claimant's "hearing test was compatible with noise exposure and noise-induced hearing loss." Dr. Hirsch, however, testified that although claimant had a mild hearing impairment, he did not have a loss of hearing for all intents and purposes.

Dr. Hirsch also reviewed the results of audiograms administered to claimant by the Pittsburgh Press from 1982 through 1986. He opined that the results of those audiograms and the one administered in his office in 1987 were essentially the same. He also testified that the test results seemed to indicate that claimant's hearing improved in some respect, but he attributed that apparent improvement to the fact that the baseline audiogram, administered by the Pittsburgh Press in 1982, "may have had some errors in it for one reason or another." He stated that from a medical standpoint it is not likely that claimant's condition actually improved.

Joseph Sataloff, M.D., (Dr. Sataloff) also testified for petitioners. Dr. Sataloff did not examine claimant but reviewed claimant's audiograms from 1982 to 1987 and the depositions of the other medical experts. According to Dr. Sataloff, there was no significant difference in the results of any of the audiograms. Dr. Sataloff testified that claimant had suffered his hearing loss by 1982, prior to being employed at the Pittsburgh Press. He also testified that claimant did not lose the use of his hearing for all practical intents and purposes.

The referee issued his decision and order on May 31, 1989. His Finding of Fact No. 21 states, "Based on all the evidence presented, claimant's testimony and testimony of Dr. Froman, which your Referee finds to be credible, the claimant has sustained his burden of proving that he suffered a complete loss of use of both ears, for all practical intent and purposes." The referee's order, in pertinent part, required petitioners to pay compensation at the rate of $336 per week for 260 weeks.

Petitioners timely appealed the referee's decision to the Board, and after argument, the Board affirmed the referee

on November 21, 1989. The Board stated that where it does not receive additional evidence, the referee is the finder of fact and has the authority to accept or reject the testimony of any witness, including that of a medical witness, in whole or in part. After carefully reviewing the record, the Board determined that the referee's decision was supported by substantial evidence.

Petitioners then simultaneously filed a petition for review with this Court and a petition for rehearing with the Board. By order of August 21, 1990, after the Board apparently granted the petition for rehearing, this Court remanded the matter to the Board for further proceedings and the entry of a new decision. Thereafter, the Board heard further argument and issued its second decision on February 6, 1991.

The Board's second opinion states that petitioners' argument is that the Pittsburgh Press cannot be responsible if there is a hearing loss as "it has tests to show that there was no worsening of the [claimant's] condition after the employment began for it." The Board determined that petitioners' argument had no merit, because the referee accepted the medical testimony of Dr. Froman, who testified that the hearing loss resulted from the "total and cumulative exposure to loud noises during [claimant's] years of employment at the Pittsburgh Press and Cleveland Press." Stating that "[h]earing loss is insidious in nature in that it continues to progress and worsen with further exposure to noise[,]" the Board opined that "[i]n hearing loss cases, it is often the total and cumulative exposure to noise at various employers which ultimately results in the compensable loss." Finding that there was substantial, competent evidence from Dr. Froman linking the hearing loss to claimant's exposure to noise at the Pittsburgh Press, the Board reincorporated its previous decision by reference and again affirmed the decision of the referee.

Petitioners filed a second petition for review with this Court, raising one issue for our review. Petitioners ask "[w]hether referee Kelsey's finding that claimant's hearing

loss resulted from the cumulative exposure to loud noises as a pressman at both the Cleveland *and* Pittsburgh Press is supported by substantial evidence[.]"

> Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence.... Where the Board takes no additional evidence, the ultimate fact-finder is the referee, whose factual determinations, when supported by substantial evidence, must be accepted.

*Mercy Catholic Medical Center v. Workmen's Compensation Appeal Board (Fry)*, 114 Pa.Commonwealth Ct. 218, 221, 538 A.2d 636, 637 (1988) (citation omitted). "This duty empowers the referee to accept or reject the testimony of any witness including medical witnesses in whole or in part.... In fact, a referee may reject uncontradicted testimony.... It is also within the referee's factfinding power to draw reasonable inferences from the evidence." *Stuck Leasing Company v. Workmen's Compensation Appeal Board (Ziegler)*, 125 Pa.Commonwealth Ct. 237, 242, 557 A.2d 808, 811, *petition for allowance of appeal denied*, 523 Pa. 652, 567 A.2d 655 (1989) (citations omitted).

Petitioners argue that "the best and substantial evidence clearly establishes that the Claimant sustained no worsening of his hearing after he began working for The Pittsburgh Press." They argue further, that it is "utterly inconceivable" that the referee found as fact that the loss of hearing resulted from claimant's cumulative exposure to loud noise during his employment as a pressman for both the Cleveland Press and the Pittsburgh Press. According to petitioners, this Court "must conclude that the audiological tests are the conclusive best evidence and therefore rule that Claimant's hearing has not worsened since he began working at the Pittsburgh Press."

We cannot agree with petitioners' argument that we should use a "conclusive best evidence" test. Our standard of review in these matters is well settled. We must affirm if the referee's findings of fact are supported

by substantial evidence. *Mercy Catholic.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Commonwealth Ct. 382, 388, 539 A.2d 11, 14 (1988).

Section 306(c)(8) of the Act sets the compensation payable for the complete loss of hearing in both ears or in one ear. The Pennsylvania Supreme Court defined complete loss of hearing to mean a loss of hearing for all practical intents and purposes. In setting that standard, the court stated that

> the legislature did not intend that the term 'complete loss of hearing' be read in a literal and absolute sense. To insist upon a literal and absolute interpretation would require, as the Board noted, 'that a person ... stand beside the mouth of an erupting cannon and hear absolutely nothing in either ear before his hearing loss could be described as "complete".' Such an interpretation would be inconsistent with the test applicable to the other specific losses enumerated within Section 306(c) and would effectively frustrate the remedial purposes behind our workmen's compensation legislation.

*Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 255–56, 348 A.2d 746, 749 (1975). Quoting *Pilkanis v. Leesona Corporation*, 101 R.I. 494, 224 A.2d 893 (1966), the court said:

> If the words [complete loss of hearing] are taken relatively rather than absolutely, and in the light of everyday experiences, rather than from the viewpoint of a literal clinician, then this precise means of measuring the extent of a hearing loss in percentiles becomes unacceptable. In this relative context a person, even though he is able to hear loud, pure tones, is completely bereft of his hearing if he is unable to communicate with his fellow man and is denied those other practical and useful benefits generally

associated with man's usual and customary wants, needs, and pleasures.

*Hartlieb,* 465 Pa. at 255, 348 A.2d at 749.

This Court, in *ARMCO, Inc. v. Workmen's Compensation Appeal Board (Carrodus),* 139 Pa.Commonwealth Ct. 326, 590 A.2d 827 (1991), stated that "[t]he test norm of a 'complete loss of hearing for all practical intents and purposes' involves a determination as to whether an individual is able to function in his or her usual social, work and familial settings." *Id.,* 139 Pa.Commonwealth Ct. at 331, 590 A.2d at 829. In that case, Dr. Froman testified that Mr. Carrodus had suffered a complete loss of use of hearing in both ears for all practical intents and purposes. His opinion was based on his examination, x-rays, and complete audiologic testing. This Court concluded, after a careful review of the record, that Dr. Froman's testimony was unequivocal and sufficient to support a finding that Mr. Carrodus had suffered a complete loss of use of hearing. The Court stated, "The fact that he has some hearing ability and that it is of some value to him is not inconsistent with the finding that he has suffered a complete loss of hearing for all practical intents and purposes." *Id.,* 139 Pa.Commonwealth Ct. at 332, 590 A.2d at 830.

Dr. Froman also testified in *ARMCO, Inc. v. Workmen's Compensation Appeal Board (Kollar),* 126 Pa.Commonwealth Ct. 288, 559 A.2d 604 (1989), *petition for allowance of appeal denied,* 524 Pa. 630, 574 A.2d 71 (1990), that the claimant had suffered complete loss of use of hearing because of exposure to noise at work. In that case, the claimant, Mr. Kollar, testified about the problems he experienced in his everyday life because of the hearing loss. The referee found the claimant and Dr. Froman to be credible and awarded benefits. This Court stated:

What is important in this case is that the claimant was able to prove that: he could not hear and understand others sufficiently to carry on a conversation unless he was facing them and was in a quiet environment; he could not hear and understand the radio or television without turning the volume up to a point where it dis-

turbed others; ... he could not hear and understand conversations at public or social gatherings or while riding in an automobile....

*Id.*, 126 Pa.Commonwealth Ct. at 292, 559 A.2d at 606.

 Our review of the record reveals that there is substantial evidence to support the referee's Finding of Fact No. 21, that claimant "suffered a complete loss of use of both ears, for all practical intent and purposes." The claimant testified regarding the effect his loss of hearing has had on his daily life. Dr. Froman testified, to within a reasonable degree of medical certainty, that claimant had suffered complete loss of use of hearing in both ears as a result of "his total and cumulative exposure to loud noise during his years of employment at the Pittsburgh Press and Cleveland Press." Dr. Froman based his opinion on his examination of claimant, x-rays, complete audiologic testing performed by an audiologist, and information claimant gave him regarding the effect of the hearing loss on claimant's daily life.

 Petitioners also argue that the Pittsburgh Press is not liable for payment of workmen's compensation benefits to claimant, because his condition did not deteriorate during the time he worked there. As the Board stated in its second opinion, Dr. Froman testified that the hearing loss was due to exposure to loud noise during claimant's years of employment at both newspapers. The Board stated, "In hearing loss cases, it is often the total and cumulative exposure to noise at various employers which ultimately results in the compensable loss." As claimant has argued, petitioners appear to urge this Court to apply the substantial contributing factor test to determine causation and liability. That test, however, is not relevant to the issue of causation when "the disability is caused by two work-related exposures, each with a *different employer.*" *General Electric Corporation v. Workmen's Compensation Appeal Board (Kosinski)*, 139 Pa.Commonwealth Ct. 310, 312, 590 A.2d 819, 820 (1991) (emphasis in original). In that case, a claimant was diagnosed with pneumoconiosis which

resulted from his work as a coal miner and then as a welder. This Court affirmed the Board's decision to assign workmen's compensation liability to General Electric, because General Electric was that claimant's last employer. We see no reason to apply the substantial contributing factor test to the issue of causation in contravention of established law.

Accordingly, the decision of the Workmen's Compensation Appeal Board is affirmed.

## ORDER

AND NOW, this 27th day of November, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.