Ronald WILLIAMS, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (GLOBAL VAN LINES), Respondent.

Commonwealth Court of Pennsylvania.

Submitted June 21, 1996.

Decided Aug. 15, 1996.

Eric L. Segal, for Petitioner.

Eugene N. McHugh, for Respondent.

Before COLINS, President Judge, FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Ronald Williams (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) that affirmed in part and reversed in part a Workers' Compensation Judge's (WCJ) decision granting Claimant's claim petitions filed against Ace Moving & Storage (Ace) and Global Van Lines (Global). We affirm.

Initially, Claimant filed a claim petition against A & L Packing & Storage (A & L), alleging that on June 1, 1991, he had suffered an injury to his left knee when he fell while moving furniture in the course of his employment with A & L. After hearings, the claim petition was granted; however, Donegal Mutual Insurance Company was dismissed as a party and A & L was found to be uninsured at the time of Claimant's injury. In this first claim petition Claimant did not allege that an employment relationship existed with either Global and/or Ace.

On April 9, 1993, Claimant filed the two claim petitions at issue here, one against Global and the other against Ace, alleging that he suffered an injury to his left knee on June 1, 1991, when he fell while moving furniture for a customer. Both Global and Ace filed answers, denying that Claimant was employed by either entity and averring that Claimant was an employee of A & L as determined by the WCJ in Claimant's prior action against A & L. Hearings were held before an WCJ,[1] who, after reviewing the

1. Bruce K. Doman was the WCJ that heard testimony and issued the decision concerning the

evidence, set forth the following findings of fact pertinent to the issues raised here:

2. The defendant, Global, entered into a contractual relationship with Ace to have Ace move goods on Global's behalf. Ace was an agent for Global.

3. The claimant was hired as an over-the-road truck driver by Glenn Leonard, the owner of A & L, and Thomas Hurley, who worked for Ace in April of 1994.

. . . .

5. The claimant received instructions for moving jobs from Brian McKenna or Thomas Hurley, employees of Ace. Mr. Leonard, a principal of A & L, would give the claimant the truck keys when he was taking the truck to perform moving services.

6. The trucks that the claimant drove were marked with "Global Van Lines, owned and operated by Ace Moving & Storage."

7. The claimant was given T-shirts, a jacket and a ball cap. This clothing had on the front "Global Van Lines" and on the back "Ace Moving & Storage."

8. The claimant received his paychecks from A & L at 22 South Commerce Way, signed by either Brenda Leonard or Raleyan Leonard, the wife and daughter of Glenn Leonard.

9. The claimant suffered a work related injury on June 1, 1991 while in the course and scope of his employment with A & L.

. . . .

16. A & L and Ace maintained offices in the same building.

17. Mr. Leonard of A & L would assign the crews to go with a particular truck, and assign who would drive the truck.

18. On June 1, 1991 the claimant received the bill of lading for the New Jersey intrastate move from Thomas Hurley [Ace employee] and went for his truck assignment to Mr. Leonard who gave him the crew

claim petition filed against A & L. Another WCJ, Wayne Dietrich, heard testimony and issued the

and put William Nicholson in charge and gave Mr. Nicholson the folder containing the paper work, while giving the keys of the truck to the claimant.

19. The claimant was not an over-the-road driver on behalf of Global.

. . . .

21. Global had interstate commerce commission authority granted to them since 1948 to ship through interstate commerce.

22. The only offices staffed by Global employees are in Orange, California, where 145 employees work.

23. Global would complete the qualification process for drivers of their agents through the U.S. Department of Transportation.

24. Global authorizes their agents to utilize Global's logos and ads on their uniform and vehicles, and permits those vehicles to be used in the agent's local and intrastate work.

25. Global does not get involved in intrastate or local moves done by their agents.

26. Ace and Mr. Hurley were agents of Global for particular purposes outlined in the contractual relationship, particularly interstate moving.

27. Ace, Global's agent, contracted with Denise Naidu Snyder to move her furniture from Flemington, N.J. to Somerville, N.J. on June 1, 1991. This agreement was confirmed by correspondence on Global letterhead.

28. The claimant was employed by A & L, who had no worker's compensation insurance on June 1, 1991.

29. Global required its agents to maintain workers' compensation coverage for the agent's employees.

30. Ace had no workers' compensation insurance on June 1, 1991.

31. Ace had the right to control claimant's activities on June 1, 1991 by virtue of providing the bill of lading to the claimant. The claimant was an employee of Ace.

decision that is presently on appeal to this Court.

32. Global was engaged in a contract with Ace to provide moving services on behalf of Global in June of 1991.

33. Ace entered into a contract with A & L on June 1, 1991 to move Denise Naidu Snyder's furniture from Flemington, N.J. to Somerville, N.J. as indicated by A & L employees assisting in the move, although there was no written agreement.

. . . .

35. A & L is the primarily responsible party for the claimant's compensation.

36. Ace is the secondary liable party for the claimant's compensation.

37. Global is the first financially responsible party for payment of the claimant's workers' compensation.

(WCJ's Decision, pp. 3–6.)

In a section of his decision entitled "Discussion," the WCJ explained that the use of Global's insignia and logo on the trucks, on the clothing worn by Claimant and others and the use of Global's letterhead on contracts with customers raised the presumption that Global was Claimant's employer. The WCJ found that this presumption was not rebutted by substantial evidence, citing *Ace Tire Co. v. Workmen's Compensation Appeal Board (Hand),* 101 Pa.Cmwlth.186, 515 A.2d 1020 (1986), *petition for allowance of appeal denied,* 515 Pa. 610, 529 A.2d 1083 (1987). Moreover, the WCJ found that Global exercised control over Claimant through its agent Ace and was, therefore, Claimant's employer, making it the contractor liable for Claimant's compensation pursuant to Sections 302(a) and 302(b) of the Workers' Compensation Act (Act),[2] i.e., a statutory employer.

Based on these findings the WCJ concluded that Global was required to pay workers' compensation benefits, medical bills and costs of litigation on behalf of Claimant, but that Global, as the first financially responsible employer, had a right of reimbursement against A & L and Ace, the primary and secondary responsible parties.

Global appealed to the Board, arguing that the case involving Claimant's first claim petition filed against A & L precludes the relitigation of this matter under the principles of collateral estoppel. Global also argued that no employment relationship existed between it and Claimant.

Citing *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975), the Board determined that collateral estoppel was inapplicable because the parties in the prior action were not the same as the parties in the present action.[3] Then, citing *North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board,* 61 Pa.Cmwlth. 469, 434 A.2d 228 (1981), the Board further determined that Claimant had failed to prove the existence of an employment relationship between himself and Global because the requisite control was "so vague as to be nonexistent." (Board's Decision, p. 6.) Consequently, the Board reversed the WCJ's order as to Global, but affirmed the order as it related to A & L and Ace.

Claimant appeals to this Court,[4] contending that the WCJ's findings of fact are supported by substantial evidence and that the Board exceeded its scope of review by overlooking the WCJ's findings. Specifically, Claimant points to the findings concerning what Claimant characterizes as a showing that Global exercised control over Ace and, in

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 461 and 462.

3. The court in *Safeguard* explained that collateral estoppel applies when:

> 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full

and fair opportunity to litigate the issue in question in a prior action.

*Id.* at 574, 345 A.2d at 668.

4. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988).

turn, its employees and that, therefore, Global was Claimant's employer.

Claimant also contends that Sections 302(a) and (b) of the Act are applicable and support the WCJ's decision in that these sections of the Act hold contractors primarily liable for benefits unless a subcontractor has purchased workers' compensation insurance. Claimant relies on *Ace Tire Co.* and *L. Guizzetti & Son v. Workmen's Compensation Appeal Board*, 38 Pa.Cmwlth. 410, 395 A.2d 590 (1978), for the proposition that because Claimant was an employee of A & L, who contracted out Claimant's service to Ace, an agent of Global, and because neither A & L nor Ace had insurance, liability should fall on Global.

In essence, the issue before this Court is whether Global can be held responsible for the payment of benefits to Claimant for his injuries, through Global's contractual relationship with its agent, Ace. We hold that Global through Ace's agency cannot be held liable based on the lack of control by Global over Claimant.

■■■ To begin our inquiry we note that whether an employer/employee relationship exists is one of law, based on the findings of fact. *W.W. Friedline Trucking v. Workmen's Compensation Appeal Board (Reynolds)*, 151 Pa.Cmwlth.38, 616 A.2d 728 (1992), *petition for allowance of appeal denied*, 533 Pa. 640, 621 A.2d 584 (1993). As part of a claimant's burden of establishing a right to compensation, he must prove all the elements necessary to support an award, including the existence of an employer-employee relationship at the time of injury. *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corp.)*, 168 Pa.Cmwlth.488, 650 A.2d 1202 (1994), *petition for allowance of appeal denied*, 544 Pa. 650, 664 A.2d 978 (1995). When an employee is furnished by one entity to another, the situation involves the borrowed servant/employee rules. *Friedline.*[5] "While there is no standard formula for determining the existence of an employer/em-

ployee relationship, the most important factor is evidence of actual control or the right to control the work to be done and the manner of its performance." *G & B Packing v. Workmen's Compensation Appeal Board (Lindsay)*, 653 A.2d 1353, 1358 (Pa.Cmwlth. 1995), *petition for allowance of appeal granted*, 542 Pa. 636, 665 A.2d 470 (1995).

In *G & B Packing* the claimant was hired by JFC Temps, an entity that provided the claimant with assignments with other entities. JFC assigned the claimant to a job with G & B as a tractor-trailer driver. Claimant was injured in the course of his duties with G & B. An issue arose concerning which entity was the responsible employer, i.e., was JFC or G & B the entity responsible for paying the injured claimant's workers' compensation benefits. In holding that JFC was the employer, the court in *G & B Packing*, listed factors indicating that the employee remained in the service of the original employer which include:

> [T]he original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place, the loaned employee's possession of a skill or special training required by the work for the second employer, and employment at a daily or hourly rate for no definite period.

*Id.* at 1359 (quoting *Shreiner Trucking Co. v. Workmen's Compensation Appeal Board (Wagner)*, 97 Pa.Cmwlth.182, 509 A.2d 1337, 1340–41 (1986)).

The *G & B Packing* court also relied on *Accountemps v. Workmen's Compensation Appeal Board (Myers)*, 120 Pa.Cmwlth.489, 548 A.2d 703 (1988), a case in which one entity assigned an employee to perform work for another entity. The *Accountemps* court held that the entity assigning the employee to the temporary job was the employer because that entity selected the employee for the assignment, determined the amount paid, and paid the salary. Furthermore, the borrowing employer did not have to train or

---

5. In *Friedline*, the court quoted *Daily Express, Inc. v. Workmen's Compensation Appeal Board*, 46 Pa.Cmwlth. 434, 406 A.2d 600 (1979), wherein the court summarized the principles to be considered in borrowed employee cases. In es-

sence, the *Daily Express* factors set forth a presumption that the employee remains an employee of the lending entity unless evidence shows that the borrowing entity assumed control over the worker's manner of performing his work.

instruct the employee in "how to perform the basic job because she was already in possession of a skill and special training required for the temporary assignment." *G & B Packing*, 653 A.2d at 1359.

■ We believe these cases are controlling.[6] Claimant, here, received job assignments from employees of both A & L and Ace. Claimant was paid by A & L and had the requisite job skills needed to perform his assigned duties with Ace. At the time of his injury, Claimant had not yet qualified to be a driver for Global. Furthermore, Ace, although the agent of Global when contracting for interstate transportation of goods, was free to enter contracts to move items intrastate, *without involving Global in any way.* The job on which Claimant was injured was an intrastate job.

Claimant emphasizes that although the trucks used by Ace and A & L were owned and operated by Ace, they were imprinted with Global insignia and that he wore Global insignia on his clothing. These facts raise a rebuttable presumption that the commercial vehicle is owned by the party whose name is on the vehicle and that the driver is in the employ of that party. *See Friedline.* However, the fact that Global's logo appeared on the truck and on Claimant's clothing is not enough by itself to base a conclusion that Global is Claimant's employer. The other evidence of record enumerated above rebuts the presumption; particularly the fact that this was an intrastate move that was not controlled by the contract between Global and Ace.

Thus, based on the facts taken together as a whole, we conclude that A & L and Ace retained the right to control Claimant's work and the manner in which he performed it. Global had no such control.

■ Moreover, this is not a case where Sections 302(a) and (b) apply; Global is not a statutory employer. The landmark case of *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), sets forth the five-part test which must be satisfied to demonstrate statutory employer status provided for in Sections 302(a) and (b) of the Act.

The following elements essential to a statutory employer's liability must be present:

● An employer who is under contract with an owner or one in the position of an owner

● Premises occupied by or under the control of such employer

● A subcontract made by such employer

● Part of the employer's regular business intrusted to such sub-contractor

● An employee of such sub-contractor

(David B. Torrey and Andrew E. Greenberg, Pennsylvania Workers' Compensation: Law and Practice § 2:16 (1995)).

■ The facts concerning the relationship between the business entities here do not meet these essential requirements. For example, Global did not control or occupy the premises where the injury took place. *See Sears Roebuck and Co. v. Fishel*, 6 Pa. Cmwlth. 384, 295 A.2d 345 (1972). Although in *Ace Tire Co.* a subcontractor who contracted with another subcontractor was held to be the statutory employer without proof of actual control over the premises, the court in *Donaldson v. Department of Transportation*, 141 Pa.Cmwlth. 474, 596 A.2d 269 (1991), *petitions for allowance of appeal denied*, 530 Pa. 667, 610 A.2d 46 and 531 Pa. 648, 612 A.2d 986 (1992), explained that the *Ace Tire Co.* case presented a scenario which was *sui generis.* The *Donaldson* court further explained that the holding in *Ace Tire Co.* did not convince it to overrule the consistent precedent requiring actual control. We also will not do so here. Without proof of actual

**6.** Claimant's reliance on *Ace Tire Co.* and *Guizzetti* is misplaced. The decision in *Ace Tire Co.* rests on the application of Section 302(a) and (b) of the Act, which we conclude is inapplicable to the case before us. *See* discussion *supra.* In *Guizzetti*, the court's decision rested on a determination that the owner of the property lacked the control over the injured claimant and that the entity that hired the claimant to perform the work on the owner's property maintained the requisite control and was, therefore, the claimant's employer. In fact, from our reading of *Guizzetti*, we believe it supports Global's position more than Claimant's, because the lending employer is held responsible for the payment of the claimant's benefits.

control, we will not hold Global to be a statutory employer.

Accordingly, for the reasons set forth above, we affirm the Board's decision.[7]

### ORDER

NOW, August 15, 1996, the order of the Workmen's Compensation appeal Board, at No. A–95–2990, dated January 25, 1996, is affirmed.

---

7. We recognize that this Court's affirmance of the Board's decision places Claimant in an unfortunate position; however,

Where an employer has not supplied workers' compensation, the clear language in Section 305 [of the Act, *as amended*, 77 P.S. § 501] offers the employee an election either to proceed under the Act by accepting the compensation schedules of Article III of the Workmen's Act or, alternatively, to secure relief outside the

Act by an action at law for damages against his employer.
*Harleysville Insurance Co. v. Wozniak*, 347 Pa. Super. 356, 361, 500 A.2d 872, 875 (1985). *See also Liberty by Liberty v. Adventure Shops, Inc.*, 433 Pa. Super. 586, 641 A.2d 615 (1994).