**NGK METALS CORPORATION and Tokio Marine and Fire Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BOCHIS), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1996.

Decided April 16, 1998.

R. Burke McLemore, Jr., Harrisburg, for petitioners.

Barbara G. Holmes, Pittsburgh, for respondent.

Before FRIEDMAN and FLAHERTY, JJ., and LORD, Senior Judge.

FLAHERTY, Judge.

Employer NGK Metals Corporation (NGK) and its workers' compensation insurance carrier, Tokio Marine and Fire Insurance Company (Tokio), were granted reconsideration of their cross-appeals and the appeal of Ronald Bochis (Claimant) from the decision of Commonwealth Court, which affirmed in part and reversed and remanded the April 18, 1996, decision and order of the Workers' Compensation Appeal Board (Board)[1]. The Board reversed the award of the healing period by the worker's compensation judge (WCJ), but affirmed the WCJ's decision in all other aspects. We reverse.

Claimant worked in a metals plant which NGK purchased on October 1, 1986 (1986) when Tokio was NGK's insurance carrier. NGK changed carriers, effective January 1, 1993, to National Union. In June of 1993, prior to the filing of his Petition, Claimant was advised by his physician that Claimant sustained a work-related complete loss of the use of his hearing. On June 16, 1993, Claimant filed a claim petition (Petition) averring a complete loss of the use of his hearing which was incurred while working for NGK.

At a hearing before the WCJ, Claimant and a lay witness testified regarding the noise level. Claimant also testified as to dates exposed, amount of exposure and hearing difficulty. Medical testimony was presented in support of Claimant's Petition. NGK presented testimony from its plant production manager concerning its takeover of the plant in 1986 and testimony by medical experts regarding Claimant's hearing loss.

After a hearing, the WCJ found that Claimant, while working for NGK, sustained a specific loss of the use of his hearing in both ears for all practical intents and purposes. In a decision rendered January 31, 1995, the WCJ awarded Claimant 260 weeks of compensation for binaural hearing loss under Section 306(c)(8)(I) of the Act, 77 P.S. § 513(8)(i), along with a 10 week healing period provided under Section 306(c)(25) of the Act, 77 P.S. § 513(25).

On April 18, 1996, the Board reversed the award of the healing period, specifically finding that Claimant never returned to employment and, in fact, left employment prior to his medical expert's diagnosis of his condition.[2] The Board determined there was no need for a healing period as the record lacked any evidence that Claimant ever intended to return to work. The Board, however, affirmed the WCJ's decision in all other aspects. Claimant appealed and NGK and Tokio cross-appealed from the Board's decision and order. This Court initially reversed

1. Pursuant to the 1996 amendments to Section 107 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 27, the name of the Workmen's Compensation Appeal Board was changed to the Workers' Compensation Appeal Board effective August 23, 1996. *See* Act 57, Act of June 24, 1996, P.L. 801.

2. Claimant retired in January, 1993. (R.R. 998.)

the Board as to the healing period but affirmed the Board otherwise. NGK and Tokio then filed an application for reargument which this Court denied while granting reconsideration which is now before us.[3]

Petitioner NGK raises the following issues on cross-appeal and reconsideration: whether substantial evidence exists to prove injurious exposure to noise levels after Claimant became a janitor so as to establish causation of the injury while in the employ of NGK; if causation is established, whether Tokio is the responsible carrier, whether Claimant proved timely notice of injury and whether the WCJ erred in relying upon the testimony opinion of Claimant's medical expert. Claimant raises the issue of whether the Board erred in reversing the healing period awarded to Claimant.[4]

The WCJ is the ultimate finder of fact, *School District of Philadelphia v. Workers' Compensation Appeal Bd. (Landon)*, 707 A.2d 1176 (Pa.Cmwlth.1998), and the exclusive arbiter of credibility and evidentiary weight. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995).

Because the WCJ has complete fact-finding discretion as to the credibility of witnesses and evidentiary weight, such findings will not be disturbed if supported by substantial evidence. *Harding v. Workers' Compensation Appeal Bd. (Arrowhead Industrial and ITT Hartford)*, 706 A.2d 896 (Pa. Cmwlth.1998). Substantial evidence · has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jordan v. Workmen's Compensation Appeal Bd. (Consolidated Elec. Distribs.)*, 550 Pa. 232, 704 A.2d 1063 (1997). Therefore, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness presented including that of medical experts. *Buczynski v. Workmen's Compensation Appeal Board (Rich-*

*ardson–Vicks, Inc.)*, 133 Pa.Cmwlth. 532, 576 A.2d 421 (1990).

As we stated in *Sellari v. Workmen's Compensation Appeal Board (NGK Metals Corp.)*, 698 A.2d 1372, 1376 (Pa.Cmwlth. 1997), "Our review, specifically regarding witness testimony, is simply to ensure that the WCJ's findings of fact have the requisite measure of support in the record."

▮▮ As part of a claimant's burden of establishing the initial right to compensation, he must allege and prove all the elements necessary to support an award, including the existence of an employer-employee relationship at the time of injury. *Williams v. Workmen's Compensation Appeal Board (Global Van Lines)*, 682 A.2d 23 (Pa.Cmwlth. 1996). Claimant has the burden of proving that his or her injury occurred in the course of employment and was related to that employment. *Cox v. Workmen's Compensation Appeal Board (Brookville Glove Mfg.)*, 144 Pa.Cmwlth. 147, 601 A.2d 404 (1991).

▮▮ When an employee has ceased working, the date that must be used to determine the date of injury from which calculations for benefits for specific loss of the use of his hearing are made is the date of last exposure, since that is the day when Claimant was last exposed to the harm that caused the injury. *Sellari* at 698 A.2d 1372. "As this court held in *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Taress)*, 143 Pa.Cmwlth. 609, 600 A.2d 626 (1991), '. . . it is the last employer under which a claimant is cumulatively exposed to loud noise that is the responsible party.'" *Id.*

### EVIDENCE AND CREDIBILITY

Claimant testified on direct examination that he started working in 1951 at a number of very noisy jobs in the plant for Employer and its predecessors until he had a knee replacement and was transferred to a janitor's job in the administrative offices in 1987.

---

3. Upon granting reconsideration, the court withdrew its original order and opinion filed August 5, 1997.

4. Our appellate review in a workers' compensation action, where the Board takes no additional evidence, is limited to determining whether the

necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Eljer Indus. v. Workers' Compensation Appeal Bd. (Evans)*, 707 A.2d 564 (Pa. Cmwlth.1998).

(R.R. 987–990.) While in his job as a janitor, he did not go back into the plant and had no noise exposure. On cross-examination, however, Claimant admitted he did not know or remember when he started working as a janitor, whether in 1985 or 1987.[5] Claimant introduced no evidence other than his own testimony concerning whether he began working as a janitor before or after NGK purchased the plant. NGK presented no admissible evidence as to Claimant's starting date as a janitor. The WCJ found Claimant's testimony to be credible (F.F. No. 8.) and also:

> 17. After review of the record, this judge finds as a fact that Claimant was exposed to loud and damaging noises during his employment with defendant and its predecessor corporations.
>
> (Finding of Fact No. 17.)

The WCJ found the testimony of Claimant's medical expert credible and persuasive that the hearing loss was due to work-related noise exposure.

In 1986, NGK purchased the facility where Claimant had been working (and other facilities) from Kawecki Berylco Industries, Inc. Even though NGK had shut down other plants and departments, NGK continued operating certain parts of the Kawecki facilities with some of the same employees. NGK, however, is a completely different company.[6]

NGK argues that there is not substantial evidence to support the finding that Claimant was exposed to noise after NGK purchased the plant. If Claimant became a janitor in 1985, as NGK contends, Claimant was not exposed to noise while working as a janitor after 1986, and, thus, was not exposed to any noise while in the employ of NGK. (R.R. 990, 991, 1001.) On the other hand, if Claimant started working as a janitor in 1987, he would then have been exposed to high noise levels after 1986 while in the employ of NGK, as alleged in his Petition. Such exposure after 1986 would make NGK the last employer when Claimant was last exposed to loud, occupational noise.

It is undisputed that NGK did not purchase the plant until 1986 and that Claimant was not exposed to any noise after he became a janitor. There must, therefore, be substantial evidence that Claimant was exposed to injurious noise after 1986 to support a finding that he was injured while employed by NGK. The beginning date of the janitori-

---

5. Cross-examination by counsel for NGK:

. . . .

Q. Now I believe you said that you've been a janitor since 1987?
A. Yes, sir.
Q. Could it have been earlier than that?
A. No, sir, no.
Q. Well, I'm showing you a copy of a card, your assignment sheet from the company and it shows—have you ever seen this before (indicating), sir?
   (Document handed to witness.)
   (Witness perusing document.)
A. No, sir, I haven't no.
Q. You never seen these cards
A. No, sir.

. . . .

Q. Well, *do you remember the date that you became a janitor then?*
A. No, sir, *I don't remember.* I can't tell you.
Q. You had to take a pay cut at the time you became a janitor, didn't you?
A. Yes, sir, I did.

. . . .

Q. And my question to you, Mr. Bochis, I'm representing to you that according to that card you became a janitor on November 18, 1985, but you state that that is wrong?
A. I wouldn't know, sir. *Like I said, I don't know what time I started.* It's been awhile and *I don't know what—if the card says '85—I don't know. I really don't know what time I started.* It's been awhile since, sir.
Q. Well, you said 1987 before. On what did you base that statement?
A. I really don't understand the question, sir. What—
Q. In response to Mr. Cook's question you stated absolutely that you became a janitor in 1987, and I'm asking you on what is that information based?
A. That's on my own information.
Q. But are you insisting that it couldn't be anytime sooner?
A. *It could be* sir. *I really don't know.* It could be.
Q. And it in fact *could have been as early as November 18, 1995?*
A. That's hard to say, sir. I really *can't remember* that far back.
Q. You had no noise exposure as a janitor, however?
A. None—None.
*(Emphasis added.)* (R.R. 998 through 1001.)

6. See N.T. pp. 4–9 of Arthur N. Becker, Jr. Production Inventory Control Manager at R.R. 199a–204a.

al job is, therefore, material to proving that the injury occurred while in the employ of NGK.

In the case *sub judice*, Claimant originally responded, on direct examination and on cross-examination, in the affirmative to questions suggesting that 1987 was the year he started the janitor's job. Thereafter, however, on cross-examination, he clearly admitted at least six times that he did not know or remember in what year he started the janitorial job which fixes the date of last exposure and relates it to the purchase of the plant by NGK in 1986.

Claimant alleged in his Petition that NGK was his employer at the time of his injury. In his testimony, however, Claimant repeatedly stated that he does not know or remember the date he started his janitorial position, which date ended his last exposure and would determine by whom he was employed on the date of last exposure. There is no other evidence of that critical date other than Claimant's original affirmation of the 1987 date which he subsequently recanted on cross-examination. In summary, Claimant's recanted testimony is at best equivocal and fails to establish that he was exposed to injurious noise after NGK became his employer.

Here, Claimant equivocated on the proof of a material allegation by making contradictory statements which did not establish the identification of his employer at the time of Claimant's last exposure to injurious noise. The WCJ did not make a finding or even indicate any awareness of the importance of the date Claimant started the janitor's job.

Therefore, Claimant has not sustained his burden of proving a fact alleged which is material to his claim, to wit: that NGK was his employer at the time he was last exposed to noise of an injurious nature. Consequently, because the *probata* varies from the *allegata*, there is not substantial evidence to support a finding that NGK was Claimant's employer when he was last exposed to injurious noise. Since none of Claimant's employers previous to NGK were alleged as liable employers in Claimant's Petition, the Petition must fail.

Thus, the Board erred when it affirmed the WCJ's finding that Claimant sustained a work-related specific loss of the use of his hearing while in the course of his employment with NGK.

Accordingly, there is no need to review the other issues raised by the parties as we reverse the Board's decision that Claimant is entitled to specific loss of use of hearing benefits.

### ORDER

NOW, April 16, 1998, the April 18, 1996, order of the Workers' Compensation Appeal Board is reversed.

FRIEDMAN, Judge, dissenting.

Under the circumstances presented by this case, Ronald Bochis (Claimant) had the burden of proving that his last exposure to injurious noise at work occurred after October 1986, the date that NGK Metals Corporation (NGK) became Claimant's employer by purchasing the metals plant in which he worked. Because I believe that Claimant has satisfied this burden and, thereby, established his entitlement to benefits from NGK, I respectfully dissent.

Here, Claimant initially testified, both on direct and cross-examination, that, from 1951, he worked at a number of noisy jobs in the metals plant for NGK and its predecessors, ending his noise exposure only after he transferred to a janitorial position in the administrative offices in 1987. The workers' compensation judge (WCJ) found Claimant credible and, based on his testimony, found as fact that Claimant was last exposed to loud and damaging noises during his employment with NGK, (WCJ's Finding of Fact, No. 17), thus making NGK responsible for Claimant's specific loss of the use of his hearing. Unlike the majority, I believe that Claimant's testimony, which was the only evidence offered with respect to the critical starting date of Claimant's janitorial job, provided substantial evidence to support the WCJ's finding.

In concluding otherwise, the majority notes that, on further cross-examination, Claimant admitted that he did not remember

exactly when he started his janitorial position; therefore, the majority holds that "Claimant's recanted testimony is at best equivocal and fails to establish that he was exposed to injurious noise after NGK became his employer." (Majority op. at 131.) I cannot agree.

In reaching its determination, the majority acknowledges that a WCJ is free to accept or reject, in whole or in part, the testimony of any witness presented. *Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.)*, 133 Pa.Cmwlth. 532, 576 A.2d 421 (1990). (Majority op. at 129.) Nonetheless, the majority appears to abandon that principle and take the position that the WCJ cannot accept or reject parts of Claimant's testimony. However, even assuming, arguendo, that the WCJ is prevented from exercising his ordinary fact-finding powers in Claimant's case, I still do not believe that a reversal is warranted because I believe that Claimant's testimony, *taken as a whole,* provides substantial evidence to support the WCJ's finding that Claimant's last exposure to injurious noise at work occurred while he was employed by NGK.

Here, Claimant testified that he began work as a janitor in 1987. On cross-examination, he may subsequently have acknowledged that the 1987 date was made only to the best of his remembrance; however, contrary to the majority's assertion, Claimant never retracted his initial testimony.[1] Rather, he merely indicated that, although that is what he remembered, he might have remembered wrongly; this is no more than anyone depending on his own recall of an event must do. If NGK had evidence to show that Claimant began working as a janitor prior to NGK's purchase of the plant in 1986, it could have presented such evidence. It did not do so.

In sum, Claimant testified that he worked in a noisy environment until he began his janitorial job which, to the best of his recollection, was in 1987, and no evidence was offered to contradict Claimant's memory of

that date. I believe that this testimony, accepted as credible by the WCJ, provided substantial support for the WCJ's finding that Claimant was last exposed to loud and damaging noises during his employment with NGK, which began in 1986. Accordingly, with respect to this issue, I would affirm Claimant's entitlement to specific loss of use of hearing benefits, and I would consider the other issues raised by the parties.

---

1. The majority states that Claimant's testimony was rendered equivocal by virtue of the fact that he recanted his original assertion with respect to the date that he began his janitorial position. I note that, in making this statement, the majority appears to apply an inapplicable standard, i.e., the standard used to evaluate medical testimony on the causal relationship between a claimant's work injury and disability, when that relationship is not obvious.