Joseph SELLARI, Petitioner,

v.

WORKMEN'S COMPENSATION AP-
PEAL BOARD (NGK METALS
CORPORATION), Respondent.

NGK METALS CORPORATION and
Tokio Marine And Fire Insurance
Company, Petitioners,

v.

WORKMEN'S COMPENSATION
APPEAL BOARD (SELLARI),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 1996.
Decided Aug. 5, 1997.

Thomas S. Cook, Harrisburg, for petitioner.

Robert P. Reed, Harrisburg, for respondents.

Before FRIEDMAN and FLAHERTY, JJ., and LORD, Senior Judge.

FLAHERTY, Judge.

Joseph Sellari (Claimant), NGK Metals Corporation (NGK) and its insurance carrier Tokio Marine and Fire Insurance Company (Tokio) appeal and cross-appeal from the decision of the Workers' Compensation Appeal Board (Board)[1] which affirmed the findings of the workers' compensation judge (WCJ) that Claimant sustained a work-related, specific loss of use of hearing but reversed the award and dismissed the claim as time-barred.

Claimant worked in a metals plant from January of 1957 through December of 1988, when he retired. NGK purchased this metals plant on October 1, 1986. Tokio was NGK's insurance carrier from October 1, 1986, through December 31, 1992. NGK changed carriers, effective January 1, 1993, from Tokio to National Union Fire Insurance Company (National Union). On June 16, 1993, Claimant filed a claim petition averring a specific loss of use of hearing allegedly incurred while working for NGK.

After hearings on the matters, the WCJ found that Claimant sustained a binaural, work-related specific loss of use of hearing for all practical intents and purposes. On January 31, 1995, the WCJ awarded Claimant the statutorily provided 260 weeks for binaural, specific loss of use of hearing under Section 306(c)(8)(I) of the Act, 77 P.S. § 513(8), along with a 10 week healing period under Section 306(c)(25) of the Act, 77 P.S. § 513(25). On April 18, 1996, the Board, while affirming the findings of the WCJ, reversed the award by finding that the petition was barred by expiration of the statute of limitations under Section 315 of the Act, 77 P.S. § 602.[2] The present appeal and cross-appeal followed.

The parties raise the following issues on appeal: whether the Board erred in determining the statute of limitations expired on Claimant's petition; whether Claimant failed to establish noise exposure while working for NGK; whether noise exposure, if established, was a substantial factor in Claimant's loss of use of hearing; whether Tokio is the responsible carrier; and whether the WCJ's award of a ten-week healing period was proper.[3]

## STATUTE OF LIMITATIONS

The Board, while affirming the findings of fact and conclusions of law of the

---

1. Pursuant to the 1996 amendments to Section 107 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 27, the name of the Workmen's Compensation Appeal Board was changed to the Workers' Compensation Appeal Board effective August 23, 1996. *See* Act 57, Act of June 24, 1996, P.L. 801.

2. The .Board, because it found Claimant's petition time-barred, *did not address the WCJ's* award of a healing period in this matter.

3. This court's appellate review in a workers' compensation matter, where the Board takes no additional evidence, is limited to determining whether the necessary findings are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995).

WCJ, reversed the award of benefits because it found that the claim petition was barred by expiration of the statute of limitations under Section 315 of the Act.[4] Relying on *Keith v. Workmen's Compensation Appeal Board (The Budd Company)*, 654 A.2d 183, 185 (Pa.Cmwlth.1995), the Board noted that the peculiar nature of hearing loss, having an "insidious and slowly progressive nature", provides the basis to toll the statute of limitations. However, because Claimant's medical expert testified that Claimant's hearing *did not worsen* after retirement, the Board believed the statute of limitations was not tolled here. Thus, it found Claimant's petition time-barred and reversed the compensation award. The Board cited *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993), for the proposition that a claimant has a continuing burden of proving the compensability of an injury throughout the pendency of the matter, and found that Claimant "did not prove the element set forth in *Keith,* necessary to allow tolling of the statute of limitations." (R.R. at 18a.) That is, the Board found that Claimant failed to establish that his hearing loss worsened after he retired.

■ The Board erred in two fashions. First, *Inglis House* specifically deals with a WCJ's ability to terminate a claimant's benefits if the evidence reveals that the claimed disability ceased during the pendency of the matter. Here, as in all matters surrounding a claimed specific loss, once a specific loss is established there is no point at which the specific loss ends. It is indefinite. Thus, a claimant need not prove that a specific loss

will continue, or worsen, throughout and beyond the pendency of the matter. The specific loss either exists or it does not exist.

Second, *Keith* does not set forth an element necessary to toll the statute of limitations in a case involving the specific loss of use of hearing. The Board failed to acknowledge that, in *Keith,* this court held that the fact that a claimant experiences hearing loss as of the date of his retirement is not sufficient for purposes of the notice and statute of limitations provisions of the Act. There is no burden placed on a claimant under *Keith* to show that the insidious and slowly progressive nature of the hearing loss must continue beyond the date of last exposure. Nor does *Keith* require that the hearing loss be diagnosed by the claimant on the date of last exposure. Indeed, in *Keith* this court specifically held that "to expect a lay person, such as a workers' compensation claimant, to possess the same level of medical knowledge as a physician would be not only unreasonable but extremely unfair." *Id.* at 185. Moreover, the *Keith* court used the descriptive terminology "insidious and slowly progressive" merely to denote the difficulty in determining a noise-induced hearing loss and to draw a distinction between this specific loss and that of a more readily apparent style of work-related injury. It is the insidious and slowly progressive nature of the hearing loss that specifically requires, in most cases, a medical expert's diagnosis of complete loss of use for all practical intents and purposes.[5]

Claimant correctly argues that case law generally affixes the date for the statute of

4. This section states, in pertinent part, that:
 In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.... However, in cases of injury resulting from ionizing radiation in which the nature of the injury or its relationship to the employment is not known to the employe, the time for filing a claim shall not begin to run until the employee knows, or by exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.
 77 P.S. § 602. While acknowledging that the loss of use of hearing is a specific loss under the

Act, not an occupational disease, the entirety of the above-quoted material is necessary, and by case law applicable, to the ultimate determination in this matter. *See B.P. Oil Co. v. Workmen's Compensation Appeal Board (DeFrank)*, 158 Pa. Cmwlth. 8, 632 A.2d 585 (1993), *petition for allowance of appeal denied*, 538 Pa. 675, 649 A.2d 676 (1994).

5. But see *Hermanson v. Workmen's Compensation Appeal Board (Kaiser Aluminum)*, 156 Pa. Cmwlth. 556, 628 A.2d 514 (1993), *petition for allowance of appeal denied*, 536 Pa. 633, 637 A.2d 293 (1993) (The claimant was fully aware of both the extent and cause of his hearing loss at least three years prior to examination by a physician. Thus, the statute of limitations began to run prior to the date the physician examined the claimant).

limitations to begin running as the date when a claimant is informed by his physician that he has a compensable hearing loss.[6] Indeed, in *B.P. Oil* this court noted that we have "consistently held that, in hearing loss cases, the date of injury is the date that a physician informs the claimant of the nature and extent of his hearing loss" and that is the date when the statute of limitations begins to run. *Id.* 632 A.2d at 589. In *Boeing Helicopter Co. v. Workmen's Compensation Appeal Board (McCanney)*, 157 Pa.Cmwlth. 76, 629 A.2d 184, 187 (1993), *petition for allowance of appeal denied*, 539 Pa. 321, 652 A.2d 796 (1994), this court held that, for purposes of the statute of limitations period under the Act, "a hearing loss becomes compensable when a claimant is advised by the doctor that he or she has suffered a complete loss of use of hearing for all practical intents and purposes and that the loss is work-related." Moreover, "[a] complete loss of hearing occurs when an individual is unable to function in usual social, work and familial settings." *Id.*

Thus, the Board's requirement that Claimant prove a slow progression of hearing loss after retirement is not consistent with case law. The date of Claimant's diagnosis by his medical expert is June 10, 1993, which is also the date when the statute of limitations begins to run. Therefore, the Board erred in determining that the petition was time-barred. As such, we shall address the additional issues presented before this court.

### NOISE EXPOSURE

■ NGK argues that, while it alone was named as a defendant, it is not the responsible party because it only came into existence as of October 1, 1986, that many noise generating operations ceased with its start-up and that it is a separate entity from its predecessors. NGK argues that Claimant failed to prove that his employment at NGK was a substantial factor in bringing about his injury. NGK instead maintains that Claimant "lumped" his employment at NGK together with his prior employment and that if there was any damage to his hearing as a result of occupational noise exposure it happened well before NGK came into existence. (NGK's

brief at 31.) NGK avers, therefore, that Claimant's injury did not result from employment with NGK.

■ As this court held in *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Taress)*, 143 Pa.Cmwlth. 609, 600 A.2d 626 (1991), however, it is the last employer under which a claimant is cumulatively exposed to loud noise that is the responsible party. NGK erroneously argues that *Pittsburgh Press* is inapplicable because Claimant was employed in metal fabricating plants for a number of years and any damage to his hearing "occurred well before NGK Metals came into existence." (NGK's brief at 33.) However, as acknowledged by NGK in its brief, this court has stated that "[d]ue to the progressive nature of hearing loss from cumulative exposure to noise, it is difficult to isolate the precise moment when a claimant suffers a complete hearing loss for all practical intents and purposes." *Boeing Helicopter*, 629 A.2d at 187. Furthermore, as this court stated in *Pittsburgh Press*, the substantial contributing factor test "is not relevant to the issue of causation when the 'disability is caused by two work-related exposures, each with a different employer.'" *Id.*, 600 A.2d at 630 (citation omitted). Thus, liability is imposed on the last employer.

■ NGK further avers that Claimant's medical expert testified to multiple non-occupational sources for the type of alleged hearing loss presented in this case. The WCJ, however, found the testimony of Claimant's medical expert credible and persuasive that the hearing loss was due to work-related noise exposure, including exposure to loud noise while working for NGK. As this court has consistently held, the WCJ is the ultimate finder of fact, *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board (Krawczynski)*, 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973), and the exclusive arbiter of credibility and evidentiary weight. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa. Cmwlth.1995). Therefore, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness presented including

---

6. *See* note 4.

that of medical experts. *Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.)*, 133 Pa.Cmwlth. 532, 576 A.2d 421 (1990).

■ This court will neither re-weigh evidence nor assert its own determinations of credibility over that of the WCJ. Our review, specifically regarding witness testimony, is simply to ensure that the WCJ's findings of fact have the requisite measure of support in the record. Our review of the record here reveals that such support exists. Thus, the WCJ was correct in finding that Claimant sustained a work-related, binaural specific loss of use of hearing while in the course of his employment with NGK.

## RESPONSIBLE CARRIER

■ The WCJ found that Claimant first knew that he suffered a complete loss of hearing caused by employment when he was so advised by his medical expert on June 10, 1993. Tokio argues that its coverage expired on December 31, 1992, and National Union was the insurer for NGK on the date the injury was discovered but the WCJ erroneously imposed liability on Tokio. Tokio contends that the Board affirmed the WCJ by citing analogies to occupational disease law, but that this court has rejected the application of occupational disease principles to hearing loss cases.

In *B.P. Oil*, however, this court stated that the actual "date of injury is the date that a physician informs the claimant of the nature and extent of his hearing loss." *Id.* at 589 (emphasis omitted). Tokio contends that this date, therefore, should also determine the responsible carrier and, thus, any liability attributable to NGK should be paid by National Union, the carrier on the date Claimant was informed of his specific loss.

However, when an employee has ceased working, the date that must be used to determine calculations for benefits for specific loss of use of hearing is the date of last exposure. This is so because that is the day when the claimant was last exposed to the harm that caused the injury. *See Pittsburgh Press.* Under such circumstances, to assign liability to an insurance carrier solely on the basis that it is the carrier on the date of diagnosis, and not on the date of last exposure, would impart an egregious result. This court shall not render such a holding. Therefore, because Tokio was the carrier in December of 1988, the date of last exposure due to Claimant's retirement, the WCJ correctly found Tokio to be the responsible carrier.

## HEALING PERIOD

Next, we address the award of a healing period in this matter. Claimant retired on December 21, 1988, and filed his claim petition on June 16, 1993. The WCJ, in his decision, awarded Claimant not only the specific loss benefits under Section 306(c)(8)(I) of the Act, but also the maximum healing period provided in Section 306(c)(25) of the Act. NGK argues that although there exists a practice of automatically awarding healing periods, which it avers was approved by this court in *Sun Oil Co. v. Workmen's Compensation Appeal Board (Davis)*, 144 Pa. Cmwlth. 51, 600 A.2d 684 (1991), such a result flies in the face of the manifest intent of Section 306(c)(25) of the Act.

Section 306(c)(25) of the Act provides that:

In addition to the payments hereinbefore provided for permanent injuries of the classes specified, any period of disability *necessary and required as a healing period* shall be compensated in accordance with the provisions of this subsection. *The healing period shall end (i) when the claimant returns to employment without impairment in earnings, or (ii) on the last day of the period specified in the following table, whichever is the earlier;*

. . .

For the loss of hearing, ten weeks.

77 P.S. § 513(25) (emphasis added).

The court in *Sun Oil* held that:

by awarding benefits even where there is no actual loss of earnings, § 306(c) creates a *presumption* that there is disability associated with a specific loss. Thus, we construe the phrase 'period of disability necessary and required as a healing period' which appears in § 306(c)(25) consistently with the *presumption of disability* used throughout § 306(c) and hold that a claimant need not demonstrate an impairment

of earning capacity to qualify for the healing period extension of benefits. *Id.* at 686 (emphasis added) (footnote omitted).

We disagree with NGK that the reasoning in *Sun Oil* is inconsistent with Section 306(c)(25) of the Act. Although *Sun Oil* holds that a claimant is entitled to a *presumption* that the specific loss entitles him or her to the healing period prescribed under Section 306(c)(25) of the Act, such a presumption is *rebuttable.* Therefore, a claimant does not have the burden to "demonstrate an impairment of earning capacity to qualify for the healing period extension of benefits." *Sun Oil* at 686. The entitlement to a healing period award is *not,* as NGK assumes, automatic. It is, however, the employer's burden to present evidence to rebut the presumption of the claimant's entitlement to the proscribed healing period.

Therefore, in light of our clarification of *Sun Oil,* we vacate the WCJ's award of a healing period to Claimant and remand this matter to the Board with instructions to remand to the WCJ to allow NGK to present rebuttal evidence with regard to the healing period and then to make necessary findings of fact and conclusions of law concerning the same.[7]

### SPECIFIC LOSS BENEFITS

The WCJ, on January 31, 1995, awarded 260 weeks of specific loss benefits to Claimant for his complete loss of use of hearing for all practical intents and purposes. Recently, our Supreme Court addressed the 1995 amendments to the Act under Act 1, Act of February 22, 1995, P.L. 1 (Act 1), effective February 23, 1995, as they apply to specific loss of use of hearing benefits, in the case of *Bible v. Department of Labor and Industry,* —— Pa. ——, 696 A.2d 1149 (1997). The Court held that Act 1 amended the hearing loss section of the Act and changed the previous standard for determining specific loss of use of hearing, which was "complete for all practical intents and purposes", to the new standard which now provides benefits for permanent partial and total loss of hearing by "multiplying the maximum number of weeks by the percentage of hearing impairment as demonstrated by audiogram testing...." *Id.* at ——, 696 A.2d at 1151.

Act 1, in pertinent part, provides as follows:

Section 306. The following schedule of compensation is hereby established:

. . . .

(8)(i) For [the complete loss of hearing, in both ears, sixty-six and two-thirds per centum of wages during two hundred sixty weeks; for complete loss of hearing in one ear, sixty-six and two-thirds per centum of wages during sixty weeks.] ... the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides. The number of weeks for which compensation shall be payable shall be determined by multiplying the percentage of binaural hearing impairment as calculated in the Impairment Guides by two hundred sixty weeks....

(ii) For permanent loss of hearing not caused by long-term exposure to hazardous occupational noise which is medically established to be due to other occupational causes such as acoustic trauma or head injury ... [t]he number of weeks for which compensation shall be payable for such loss of hearing ... shall be determined by multiplying the percentage of impairment by two hundred sixty weeks....

. . . .

(iv) The percentage of hearing impairment for which compensation may be payable shall be established solely by audiogram.

77 P.S. §§ 513(8)(i), (ii) and (iv). In essence, Act 1 now provides for a sliding scale of compensation for hearing loss based on objective factors.

Additionally, the Court held that Act 1 provided that these changes were intended to apply "'retroactively to all claims existing as of the effective date of this act *for which compensation has not been paid or awarded.*'" *Bible* at ——, 696 A.2d at 1151 (cita-

---

7. We note that nowhere in the record did Claimant raise as an issue that he was forced to retire from employment with NGK because of a work-related specific loss of use of hearing.

tion omitted)(emphasis added). Indeed, Section 3(2) of Act 1 states that:

(2) The amendment or addition of sections 105.5 and 306(c)(8)(i), (ii) and (iv) shall apply retroactively to all claims existing as of the effective date of this act *for which compensation has not been paid or awarded.*

*Id.* (emphasis added). Guidance in the present matter, however, can be found in *Drop v. Workmen's Compensation Appeal Board (U.S. Steel Mining Co.),* —— Pa. ——, 696 A.2d 1157 (1997), a Supreme Court decision filed the same day as *Bible.*

In *Drop,* the claimant was denied specific loss of use of hearing benefits by the WCJ and the Board. While the appeal was pending before this court, Act 1 was enacted. This court affirmed the Board's denial of benefits. On appeal to the Supreme Court, the parties agreed that the matter fell within the language of Act 1. The employer argued, however, that the claimant waived any argument regarding the retroactive application of Act 1 because it was not first raised in this court after Act 1 became effective. Under the circumstances of that case the *Drop* Court stated that strict application of the waiver analysis was not appropriate and held that, as compensation had not been paid or awarded at the time Act 1 became effective, the retroactivity provision of Act 1 made it applicable to the matter on appeal. The *Drop* Court, therefore, remanded the matter to the Board for further proceedings.

 Here, although *Bible* provides that the Act 1 amendments are to be applied retroactively, under the guidance of *Drop* we hold that *Bible* is not applicable to the present case and that Claimant's specific loss of use of hearing benefits are not affected by the retroactive application of Act 1 because they were awarded by the WCJ on January 31, 1995, prior to the February 23, 1995, effective date of Act 1. Therefore, we affirm the WCJ's award of 260 weeks of specific loss of use of hearing to Claimant.

Accordingly, we reverse the Board's determination that the claim petition is time-barred, affirm the WCJ's award of 260 weeks of specific loss benefits to Claimant but vacate the award of a healing period to Claimant and remand to the Board with instruc-

tions to remand to the WCJ solely for the purpose of allowing NGK to present rebuttal evidence in regard to the presumption that Claimant is entitled to a healing period for his specific loss of use of hearing and to make appropriate findings of fact and conclusions of law thereof.

### ORDER

NOW, August 5, 1997, the April 18, 1996, order of the Workers' Compensation Appeal Board is reversed to reflect that the claim petition of Joseph Sellari is not time-barred.

Moreover, we affirm the WCJ's award of 260 weeks of specific loss benefits to Claimant but vacate the award of a healing period and remand to the Board with instructions to remand to the WCJ for the sole purpose of allowing NGK to present rebuttal evidence regarding the presumption of Claimant's entitlement to a healing period and to make appropriate findings of fact and conclusions of law thereof.

Jurisdiction relinquished.

LORD, Senior Judge, concurs in the result only.