**Gilbert TWYMAN, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PENNSYLVANIA DEPARTMENT OF TRANSPORTATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 19, 1997.
Decided Oct. 8, 1998.

Jeffrey V. Matteo, Norristown, for petitioner.

Lisa D. Eldridge, Philadelphia, for respondent.

Before PELLEGRINI and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

Gilbert Twyman (Claimant) petitions for review of that part of an order of the Workers' Compensation Appeal Board (Board) which reversed only that part of the December 21, 1994 decision of Workers' Compensation Judge Nancy Goodwin (WCJ) that awarded penalties and attorney fees to Claimant's counsel. We reverse the Board with respect to the denial of penalties and attorney fees and reinstate the decision of the WCJ.

On July 3, 1984, Claimant, a twenty-year employee of the Pennsylvania Department of Transportation (DOT), filed a Claim Petition (Petition) alleging that, on October 1, 1983, he sustained a herniated disc at the L4–L5 level and injured the sciatic nerve while lifting a guardrail as a highway maintenance worker. DOT denied his claim. Claimant was found to have an injury "in the nature of a ruptured intervertebral disc on the left at L4–5" and was awarded workers' compensation total disability benefits, medical expenses and attorney's litigation costs pursuant to a decision by Referee Carl Lorine (Referee) on March 20, 1987.[1]

---

1. Before the 1993 amendments to the Workers' Compensation Act, Workers' Compensation Judges were called "Referees." We shall refer to the Referee and Judge involved in this case as they were referred to at the time of their respective decisions. The 3/20/87 decision of Referee Carl Lorine awarding Claimant benefits is not on appeal before the court. The only decision before the court is the 12/22/94 decision of WCJ Nancy Goodwin granting Claimant's penalty petition.

Claimant filed a Penalty Petition on October 3, 1991, alleging that DOT failed to reimburse Claimant for the costs of a Craftmatic orthopedic bed purchased by Claimant on August 18, 1989, in the amount of $3,492.74, and also that DOT failed to pay for other medical bills. In the Penalty Petition, Claimant requested a penalty of twenty percent (20%) of the unpaid medical bills, interest and counsel fees of twenty percent (20%) of the unpaid medical bills or, in the alternative, counsel fees of $115.00 per hour. The Penalty Petition was then assigned to WCJ Goodwin.

In response, DOT filed an answer denying that the orthopedic bed was a reasonable and necessary cost, averring that the bed was purchased without a medical prescription and that all reasonable and necessary medical bills supported by reports had been paid. Claimant had forwarded a bill to State Workers' Compensation Insurance Fund (SWIF) on February 6, 1990, for the purchase of a Craftmatic bed prescribed by Claimant's original treating physician, Dr. Gambetta. (Finding of Fact No. 4.)

On March 12, 1992, DOT filed a Review Petition, alleging that the Claimant was no longer in need of further treatment in the form of modalities, such as microelectrical nerve stimulation (MENS), ultrasound, massage, biofeedback, etc. DOT also alleged that Claimant's purchase of the Craftmatic bed and the cost of the medical treatment was not reasonable and necessary.[2]

WCJ found that Claimant had work-related back surgeries in 1984 and 1985 and was found to have chronic low back pain syndrome, failed low back surgery and lumbar arachnoiditis, i.e., scarring in and around the lumbar nerve roots. (Finding of Fact No. 2.)

Dr. Kenneth Izzo, a specialist in physical medicine and rehabilitation, to whom Claimant was referred by Dr. Gambetta, testified that he had treated Claimant on 30 visits beginning January of 1990, had leased a MENS unit (microelectrical nerve stimulation) to Claimant at $450 per 60–day period, had generated a report and bill after each visit and had sent them to defendant SWIF or PIMCO for payment.[3] Dr. Izzo's testimony was credited by the WCJ that the bed was reasonable and necessary as a device that he could use at home to ease his chronic pain, to lessen his need for medications and therapy and was, therefore, cost effective. The WCJ found that, by sending the reports and bills to SWIF, the Claimant's medical provider billed the proper insurer, since PIMCO was SWIF"s administrator.

Based on the June 26, 1991 examination of DOT's doctor (Dr. Lerman), Claimant had an L3–L4 degenerative disc with central herniated nucleus pulposus, L4–L5 laminectomy discectomy times two with post operative scarring on the left. Part of Dr. Lerman's testimony was rejected by the WCJ to the effect that the bed would not be therapeutic, but would only make him feel better for a period of time.

The WCJ granted a part of DOT's Petition to Review Medical Treatment and/or Billing (Review Petition) and granted Claimant's Petition for Assessment of Penalties (Penalty Petition). DOT then appealed to the Board the WCJ's awarding of Claimant's counsel fees and the Board reversed. The Board affirmed the payment of the unpaid medical bills and expenses approved by the WCJ but

2. All of the medical bills in question were incurred prior to August 31, 1993. The Act at that time provided an avenue for the employer to challenge the reasonableness or necessity of the medical treatment by way of a Review Petition. The filing of a petition challenging the reasonableness or necessity of medical treatment (Review Petition) does not, however, act as an automatic supersedeas. *Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck & Co.)*, 104 Pa.Cmwlth. 175, 521 A.2d 503 (Pa. Cmwlth.1987), *petition for allowance of appeal denied*, 516 Pa. 644, 533 A.2d 714 (1987). Prior to the 1993 amendments to the Act, the employer and/or insurance carrier had to pay medical expenses as they were incurred and then contest the expenses. *See ADIA Personnel Agency v. Workmen's Compensation Appeal Board (Coleman)*, 137 Pa.Cmwlth. 405, 586 A.2d 507 (Pa. Cmwlth.1991), *petition for allowance of appeal denied*, 528 Pa. 624, 597 A.2d 1154 (1991).

3. For workers' compensation purposes, DOT uses the State Workmen's Insurance Fund (SWIF) as its insurance program. SWIF then uses the Pennsylvania Insurance Management Company (PIMCO) on all its state cases as a third party administrator to pay claimants' medical bills (acting as the agent on behalf of SWIF).

reversed in part based upon the assertion of DOT that there was confusion among its carrier and its agents as to who was responsible for payment of the bills when due. The Board further held that, because some of Claimant's medical bills *had* been paid, Claimant was not entitled under Section 440(a) of the Act to an award of attorney fees.[4]

Claimant appealed only the reversal of the WCJ's award of penalties and attorney fees to this court on the grounds that the Board exceeded its scope of review and erred as matters of law in substituting its own findings for those of the WCJ and for reversing the assessment of penalties and counsel fees because there was substantial evidence supporting that decision.

DOT contends that the Board correctly overturned the WCJ's findings of fact and conclusions of law for not clearly and concisely rendering a reasoned decision explaining the rationale for her decision and order which DOT maintains contravenes Section 422(a) of the Workers' Compensation Act (Act), 77 P.S. § 834.[5] DOT also relies on the Board's finding that there was "considerable confusion" as to whether the insurance carrier responsible for payment of Claimant's medical bills was SWIF or PIMCO and, because some of the bills were paid, the non-payment of Claimant's bills was in substantial compliance with the Act and not a violation thereof. DOT further contends that the

Board made an additional finding that neither the Employee, Dr. Izzo, or the Pain Management Rehabilitation Center were irreparably harmed by DOT's delay in paying Claimant's medical bills and that this finding supports the Board's conclusion that DOT did not violate the Act.[6]

WCJ treated Claimant's Penalty Petition as a claim for these unpaid medical expenses, found that the testimony of Dr. Izzo and even the testimony of DOT's own expert (Dr. Lerman), to be credible and that such credible evidence supported the medical necessity and reasonableness of Claimant's expenses prior to June 26, 1991, the date of Dr. Lerman's testimony. In Dr. Lerman's opinion, Claimant had received reasonable and necessary, but maximum, benefits from office visits to Dr. Izzo up to the date of his examination, but in the future should use MENS at home instead of in Dr. Izzo's office, continue using the Craftmatic bed and have periodic six-week, not monthly, evaluations by Dr. Izzo to monitor Claimant's narcotic medications and be examined by a specialist (once every three months). Dr. Lerman uses a MENS unit at home for himself.

After hearings, WCJ found that the past purchase of the Craftmatic bed and, for the future, a MENS unit were reasonable and necessary medical expenses in the treatment of Claimant's work injury, and that the bed, along with other medical equipment in dispute, are medical supplies that were and are

---

4. Section 440(a) of the Act, 77 P.S. § 996, provides for an award of attorney fees to a claimant "in whose favor *the matter at issue has been finally determined* in whole or in part."

5. The Act is the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § § 1–104.4; 2501–2626. Section 422(a) of the Act, 77 P.S. § 834, reads, in pertinent part:
    All parties to an adjudicatory proceeding are entitled to a reasoned decision, containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.
    However, Appellant (Claimant) did not raise in his brief in the Statement of Questions Involved the issue of the WCJ's compliance with the "reasoned decision" requirement under Section 422(a). Further, DOT's brief, as appellees, did not contain a "Counter-statement of Questions Involved." In fact, although DOT argued the

issue of an unreasoned opinion to the Board (Brief for Respondent, DOT, at p. 6), the opinion of the Board never even challenged the WCJ's decision on that basis, as DOT misrepresents in its brief. (Brief For Respondent, DOT, at p. 11.) It will, therefore, be assumed that DOT is satisfied with the issues raised by the appellant and any others remain unchallenged in the proper manner in accordance with Pa. R.A.P. 2112. In any event, the WCJ provided ample reasoning to support her decision.

6. DOT also misrepresents in its brief that the Board found that there was no "irreparable harm" to the medical providers. (Brief for Respondent, DOT, at p. 13, citing R.19a–20a where no such finding can be found.) A careful review of the Board's entire opinion finds no such statement and no basis for even an inference of such a *finding*, which would be beyond the scope of the Board's review in any event.

necessary to treat the Claimant's work injury within the meaning of Section 306(f) of the Act.[7]

Although the WCJ accepted Dr. Lerman's testimony on the reduced need for treatment after June 26, 1991, the WCJ concluded that the Claimant met his burden of proof on the Penalty Petition in that the medical expenses, supplies and equipment incurred before June 26, 1991 by the Claimant in his treatment with Dr. Izzo and at the Pain Management and Rehabilitation Center were related to Claimant's work injury and found that the Defendant's payment or reimbursement of the bills was unreasonably delayed in violation of Section 306(f) of the Act.

The WCJ granted the Penalty Petition and ordered that DOT should pay all outstanding medical bills up to the date of her opinion (12/22/94), plus a five percent (5%) penalty of the total medical bills submitted for payment, pay Claimant's attorney's fee of $5,318.75, and reimburse Claimant's attorney for litigation expenses in connection with the Penalty Petition proceeding.

However, WCJ found that DOT *did* meet its burden of proof and granted the Review Petition, as of June 26, 1991 because the treatment rendered to the Claimant at the Pain Management Rehabilitation Center and by Dr. Izzo on and after June 26, 1991 was unreasonable and unnecessary, except for the treatment set forth in Findings of Fact 17 and 19.[8]

The Board affirmed the WCJ's decision on the Review Petition and on that part of the Penalty Petition ordering DOT to pay Claimant's outstanding medical expenses up to December 22, 1994, but reversed the WCJ's decision granting Claimant's Penalty Petition assessing a penalty and attorney's fees against DOT.[9]

The Board also held that there is sufficient, competent evidence to support the WCJ's finding that, after June 26, 1991, it was reasonable and necessary for Claimant to have follow-up visits with Dr. Izzo at six-week intervals, and to consult with a specialist every three months. Accordingly, the Board upheld the WCJ's grant in part and denial in part of the Petition to Review Medi-

7. The section of the Act that governs the payment of the bills at issue is currently numbered Section 306(f), 77 P.S. § 531. However, the language controlling the payment of bills is the language of this section prior to the 1993 amendments in Act 44 (since all of the bills at issue were incurred prior to 1993). The pertinent language of this section reads:

"The following schedule of compensation is hereby established:
(1) The employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, *as and when needed....*" (Emphasis added.)

Prior to the Act 44 amendments in 1993, this section was numbered Section 306(e) of the Act. The section was renumbered as 306(f.1), 77 P.S. § 531 when it was amended on July 2, 1993, P.L. 190, No. 44 and was further amended June 24 1996, P.L. 350, No. 57. The 1993 amendment to the controlling language of the Act made no change to the pertinent language of section 306(e) as it applies to this case. The 1994 amendment changed the language of this section, but is not controlling or pertinent and has not been included or considered.

8. Finding of Fact No. 17 reads:
Dr. Lerman's opinion is credible that treatment has been exhausted for Claimant. There is no further treatment that is going to benefit

him at this time. (Deposition testimony of Dr. Lerman, at 41) Claimant only needs whatever home appliances may give him relief as set forth above, and to be followed on a regular basis, approximately at six (6) week intervals, possibly by a physiatrist such as Dr. Izzo to monitor his narcotic medication. These would fall under follow-up visits for which a reasonable charge should reflect it was a follow-up visit. It would also be reasonable for Claimant to have a consultation with a specialist once every three (3) months depending on the primary physician, and a reasonable charge for this intermediate type of visit with a specialist would be $125.00 per visit. (Deposition testimony of Dr. Lerman, at 23, 24, 41, 42 and 43) Finding of Fact No. 19 reads:
Claimant uses home appliances now, a TENS unit with a specialized electrode placement belt, and other machines which give an electrical stimulation. Electrical stimulation is what really helps his pain. (Claimant's testimony, March 25, 1992, at 13–14) He is also taking Tylenol with Codeine and Valium to sleep. And he sleeps in his Craftmatic bed. He also uses a cane to ambulate.

9. On DOT's appeal, the Board also held that the admission of Claimant's Summary of evidence was harmless error because there was substantial evidence of record which supported the findings of fact independent of the summary. No appeal was taken from this decision.

cal Treatment relating to the payment of expenses treatment before and after June 26, 1991, and for ongoing treatment with Dr. Izzo and a specialist and for home appliances.[10]

■ Appellate review in workers' compensation matters, where the Board takes no additional evidence, is limited to determining whether substantial evidence supports the necessary findings of fact, whether there is a violation of constitutional rights, or whether an error of law was committed. *Sellari v. Workmen's Compensation Appeal Board (NGK Metals Corp.)*, 698 A.2d 1372 (Pa. Cmwlth.1997). This standard of review applies to both the Board and to this Court. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa. Cmwlth. 277, 572 A.2d 838 (Pa.Cmwlth.1990).

■ In reviewing the testimony of a medical witness, determinations as to the weight and credibility of conflicting medical testimony are solely for the WCJ as factfinder. *Cittrich v. Workmen's Compensation Appeal Board (Laurel Living Ctr.)*, 688 A.2d 1258 (Pa.Cmwlth.1997). The WCJ is the ultimate factfinder and has the sole prerogative of assessing credibility and conflicts in testimony and may accept or reject, in whole or in part, the testimony of any witness. *Bethenergy Mines.* When there is a violation of the Act, the WCJ has the discretion to determine whether an imposition of penalties is warranted. *Dworek v. Workmen's Compensation Appeal Board (Ragnar Benson, Inc.)*,

166 Pa.Cmwlth. 512, 646 A.2d 713 (Pa. Cmwlth.1994).

With respect to Claimant's Penalty Petition, the WCJ concluded that, although DOT met its burden on the Petition for Review causing the WCJ to limit treatment after June 26, 1991, because Claimant's treatments at the Pain Management Center and with Dr. Izzo *prior to June 26, 1991*, and as limited thereafter, were related to Claimant's work injury, DOT's delay in paying for these treatments was unreasonable and violated Section 306(f) of the Act. *See* Footnote 7, *supra.*

The Board's affirmance of DOT's position that it did not violate the Act was based upon the fact that some of the bills were paid and on the Board's finding that there was confusion between SWIF and PIMCO as to who should have paid them, relying in the latter position on *P. & R. Welding & Fabricating v. Workmen's Compensation Appeal Board (Pergola)*, 664 A.2d 657 (Pa.Cmwlth.1995), *aff'd on appeal*, 549 Pa. 490, 701 A.2d 560 (1997).[11] In *P. & R. Welding*, the employer unilaterally implemented, without a supplemental agreement, a reduced payment schedule to include credits it claimed from subrogation rights and was found by the Board to have substantially complied with the Act.

■ Here, the WCJ found as a fact that Claimant's medical expenses were timely sent to the Employer's insurance carrier once every month after each treatment and payment was delayed, in some cases up to one year. The Board excuses such delay because it found "confusion in the record"

---

**10.** The decision of the WCJ on the Review Petition was not appealed.

**11.** *See,* however, the WCJ's Findings of Fact Nos. 22, 23 and 24 which read:

> 22. It appears that the bills for Claimant's treatment were sent to S.W.I.F., not a party to this proceeding. (C–1, C–5, C–6, C–7 and C–10) The Defendant in this case is PennDot, a self-insured through third party administrator P.I.M.C.O..[sic] However, P.I.M.C.O. is the third administrator on all S.W.I.F.'s State cases. Claimant's Claim Petition for compensation was granted and the Defendant therein, *PennDot and S.W.I.F., was ordered and directed to pay Claimant's compensation.* (B–1) Also, it appears that there has been at least partial payment to Dr. Izzo and the Pain Management

> Rehabilitation Center in response to billing S.W.I.F..[sic] Therefore, by sending bills to S.W.I.F., the *Claimant's medical providers herein did bill the proper insurer* whose third party administrator P.I.M.C.O. is now a party in this proceeding, as well as Claimant's employer. (Emphasis added.)
> 23. Dr. Izzo's balance on December 31, 1991 was $2,485.00 and has been forwarded to P.I.M.C.O. as of April 20, 1992, and P.I.M.C.O. agreed to pay within six (6) to eight (8) weeks. (C–6) Dr. Izzo's treatment of Claimant has been related to Claimant's work injury of October 11, 1983 to his low-back and left leg.
> 24. The whole billing from the Pain Management Rehabilitation Center was $3,935.00. Dr. Izzo received a partial payment, and $1,200.00 to $1,400.00 is outstanding. (Dr. Izzo, pp. 71 and 71.)

regarding who was responsible among Employer, SWIF and PIMCO as to who should pay. Section 306(f), in effect at this time, specifically provided that "the *employer* shall provide payment ... as and when needed...." (Footnote 7, *supra.*) An employer must pay all of a claimant's medical expenses until a referee or WCJ terminates these benefits. *Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.)*, 163 Pa.Cmwlth. 468, 641 A.2d 655 (Pa. Cmwlth.1994). "In Stonebraker, this court clearly held that an employer has an 'absolute duty' to pay a claimant's medical bills until a referee determines that liability no longer exists." *Listino v. Workmen's Compensation Appeal Board (INA Life Insurance Co. and Cigna Worker's Comp. Center)*, 659 A.2d 45 at 47 (Pa.Cmwlth.1995).

Neither counsel for DOT nor the Board cite, nor has this court found, any legal authority where internal confusion, as such, solely among the employer, its carriers and its administrator, has been identified as sufficient legal cause for the Board to conclude that there was no violation of the Act by the Employer and therefore, no basis for the WCJ to impose penalties for multiple violations of Section 306(f) of the Act. None of the unilateral confusion claimed by DOT and its agents was ever a finding of the WCJ and, in fact, appears to be inapposite to Finding of Fact No. 22, *supra.* (*See* Footnote 11, *supra.*) There is substantial evidence for the WCJ's finding that defendant's payments of Claimant's medical bills were unreasonably delayed. Finding of Fact No. 26. The Board did, therefore, exceed its authority by reweighing the evidence. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth. 1996).

When the Claimant and his providers have complied with the Act in all respects and the Employer's failure to make timely payment is caused by its own insurance carrier, it would be unfair to penalize, or even jeopardize, Claimant's credit rating and future treatment with his medical providers by excusing the Employer's illegal delays. A typical example would be where a doctor or pharmaceutical supply company had a deal with a claimant that if he rented a piece of equipment, such as a MENS machine, the rental payments would be applied toward the purchase price. Although the record here only states that "the deal fell through," without assigning any blame to DOT the matter of nonpayment of the rent by an employer still illustrates the precarious nature of a claimant's medical expense payments with regard to obtaining certain needed medical treatment from providers who can only extend credit for a limited time on expensive equipment.

■ Under the Act, the employer, *per se,* is primarily liable for the employee's medical expense and it cannot escape its duty of timely payment by using the "confusion" of its own insurance carrier and administrators as a shield from violations of the Act. *P. & R. Welding* is clearly distinguished from the instant case because *P. & R. Welding* made regular consistent compensation payments to claimant which, although reduced, were not based on confusion but on a reasonable misconception of its subrogation rights. There was no excessive delay in paying *medical* bills. Further, *P. & R. Welding* was not intended to provide DOT, as a unit of state government, with some form of judicial immunity from a duty imposed by the Legislature to pay its medical bills "as and when needed," merely by asserting confusion as an excuse, especially when the delay was for over a year and the WCJ did not even find that any such confusion existed as a fact.

■ The Board, therefore, committed an error of law when it exceeded its scope of review by reweighing the evidence and making confusion essentially a finding of fact on appeal in addition to its error of law in substantially relying on the bare fact· that because "some of Claimant's medical bills were in fact paid," DOT was in substantial compliance with Section 306(f). (R.R. 19a, 20a.) The Act, which requires payment of all medical bills "as and when needed," cannot be read as a matter of law to read that the obligation to pay medical bills is satisfied when payment of "part of" the medical bills is made or when the employer, its insurer and administrator solve their internal organizational problem regarding responsibility for

payment of an injured employee's medical bills. The Board's conclusion is, therefore erroneous that the Employer did not violate Section 306(f) of the Act. It is well settled that questions of credibility, resolutions of conflicting testimony and the weight to be given the evidence are all matters to be resolved solely by the factfinder which, in workers' compensation cases, is the WCJ. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa. Cmwlth. 288, 572 A.2d 843, 844 (Pa.Cmwlth. 1990).

DOT also argued to the Board that the WCJ erred by directing DOT to pay attorney fees to Claimant's counsel, in the sum of $5,318.75, based upon DOT's unreasonable contest of the Petition for Assessment of Penalties. The Board determined that since they had reversed that portion of the WCJ's decision which granted Claimant's Petition for Assessment of Penalties, the issue had not been finally determined in Claimant's favor and therefore, Claimant was not entitled under Section 440(a) of the Act to an award of attorney fees and also reversed that portion of the order of the WCJ.[12] Since the Board erred in reversing the WCJ's assessment of the penalty, it follows that it also erred in holding that the Claimant was not entitled to attorney's fees because the issue of penalties of the employer has now been finally determined to be in Claimant's favor in accordance with Section 440(a) of the Act, 77 P.S. § 996.

We reverse the Board and reinstate the WCJ's assessment of penalties and attorney's fees against DOT.

### ORDER

NOW, October 8, 1998, the order of the Workers' Compensation Appeal Board, No. A95–0115, dated February 12, 1997, is affirmed except that it is reversed insofar as it reverses the WCJ's granting of Claimant's Penalty Petition. The December 22, 1994, order of the Workers' Compensation Judge granting Claimant's Petition for Assessment

of Penalties and assessing attorney's fees against defendant is reinstated.

---

**12.** Section 440(a) of the Act, 77 P.S. § 996, provides for an award of attorney fees to a claimant "in whose favor the matter at issue has been finally determined in whole or in part."