**P. & R. WELDING & FABRICATING**
**and the Donegal Mutual Insurance**
**Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION**
**APPEAL BOARD (PERGOLA),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 19, 1995.
Decided Aug. 24, 1995.

John C. Mascelli, for petitioner.

Clement J. Cassidy and Brooke M. Boyer, for respondent.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

This case involves the subrogation rights and liabilities of an employer/insurer with respect to an employee's recovery in a third party tort action. P. & R. Welding & Fabricating and the Donegal Mutual Insurance Company (collectively, Employer) petition for review of the December 9, 1994 order of the Workmen's Compensation Appeal Board, in which the Board affirmed the decision of the

Workers' Compensation Judge (WCJ), denying Employer a credit for future workers' compensation payable and assessing against Employer past due compensation, penalties, interest, and legal fees. We reverse and remand.[1]

The principal issue before us is whether the WCJ and Board improperly determined Employer's subrogation rights and liabilities under Section 319 of the Workers' Compensation Act (the Act).[2] The additional issue before us is whether the WCJ and Board erred in assessing against Employer past due compensation, penalties, interest, and legal fees.

## Background

The following facts, as found by the WCJ, are not disputed. Claimant Larry Pergola sustained a work-related injury on July 28, 1985. Claimant began receiving total disability benefits in the amount of $336.00 per week pursuant to a Notice of Compensation Payable dated December 20, 1985. Claimant instituted a third-party tort action, which he settled for $165,000.00. Claimant expended $57,610.95 in counsel fees and costs to obtain the settlement in the third-party action. At the time of Claimant's settlement, Employer's accrued lien, for weekly compensation and medical expenses theretofore paid by Employer, totalled $117,167.25. Employer accepted $35,000.00 as a settlement of its accrued lien. Thereafter, beginning November 19, 1989, Employer paid Claimant a reduced compensation rate, varying between $112.00 to $235.20 per week.[3] As a result,

---

1. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro),* 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990).

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

3. Specifically, the WCJ found:

   2. Claimant received his compensation in accordance with the aforesaid compensation agreement from onset to November 19, 1989; thereafter defendant varied both the timing and the amounts of compensation paid in accordance with his exhibit introduced at the

hearing and affixed hereto. Defendant paid claimant 7 weeks at $112.00 per week; 4 weeks at $112.00 per week; 15 weeks at $117.60 per week; 4 weeks at $117.60 per week; 6 weeks at $117.60 per week; 4 weeks at $117.60 per week; 4 weeks at $117.60 per week; 6 weeks at $117.60 per week; 4 weeks at $117.60 per week; 8 weeks at $117.60 per weeks; 8 weeks at $117.60 per week; then every 2 weeks at $235.20 per week for a period of 14 weeks; thereafter, every two weeks at $117.60 per week from September 12, 1991 to January 28, 1993; then from January 29, 1993 to February 22, 1993 (25 days at $48.00 per day according to compensation agreement) at $38.59 per day; and finally from February 12, 1993 to present, every 2 weeks at $117.60 per week. In total, defendant owes claimant $38,-943.40 in past due and delinquent compensa-

Claimant filed a Petition for Review, alleging that Employer had unilaterally altered Claimant's weekly compensation rate without a judicial order or supplemental agreement. Employer filed a Petition for Modification.[4]

Based on these undisputed facts, the WCJ determined that Employer owes Claimant $40,903.77 as its share of the legal fees relating to Claimant's recovery in the third-party action. The WCJ determined Claimant's net recovery from the third-party action to be $31,125.57. The WCJ Judge held that "since claimant's net recovery of $31,125.57 is less than [Employer's] lien of $117,167.25, [Employer] is not entitled to any credits from future compensation payments." (WCJ's January 31, 1994 Opinion at 3). The WCJ determined that Employer owes Claimant $38,943.40 in past due compensation, with $226.20 more added each week. The WCJ held that Employer had violated the Act by altering Claimant's compensation without a supplemental agreement or administrative decision and by paying compensation in an unpredictable and erratic manner. Therefore, the WCJ imposed on Employer a penalty of 20% of the compensation payable and 10% interest on the foregoing. Further, the WCJ ordered Employer to pay Claimant's counsel fees for an unreasonable contest in this action.

The Board affirmed, holding that the WCJ had properly applied the formula set forth in *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas),* 506 Pa. 592, 487 A.2d 794 (1985), in determining Employer's subrogation rights and liabilities. Additionally, the Board held that substantial record evidence supports the WCJ's findings of fact and conclusions of law relating to the assessment of penalties, interest, and counsel fees.

On appeal to this Court, Employer contends that the WCJ and Board improperly held that it had waived its right to a credit for future payments by accepting the $35,-000.00 settlement of its accrued lien. Additionally, Employer contends that the WCJ

and Board erred in failing to apply the preferred "bureau method" to determine Employer's subrogation rights and liabilities. According to Employer, it is entitled to a $47,832.75 credit against future compensation payments, subject to repayment of Claimant's remaining legal expenses of $16,707.18. Thus, according to Employer's calculations, Employer is entitled to a grace period of 142.57 weeks during which Employer is to repay Claimant's legal expenses at $117.60 per week. Consequently, Employer contends that the WCJ and Board erred in assessing against Employer $38,943.40 in past due payments, a 20% penalty and 10% interest thereon, and counsel fees and costs based on an unreasonable contest.

### Discussion

Section 319 of the Act provides:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

77 P.S. § 671 (footnote omitted.)

Employer does not dispute that it settled its accrued lien (including legal fees) for $35,-

---

tion with $226.20 more being added every 2 weeks.
(WCJ's January 31, 1994 Opinion, Finding of Fact No. 2.)

4. Employer also filed a Termination Petition, which was denied and dismissed. Employer did not appeal that decision.

000.00. Employer argues at length that, in accepting the settlement, it did not waive its right to a credit for future compensation payable. Contrary to Employer's assertion, the WCJ and Board did not hold that Employer had, in accepting the $35,000.00 settlement, waived its right to a credit for future compensation payable. Rather, the WCJ and Board held that Employer is not entitled to a credit because Claimant's "net recovery of $31,125.57" is less than Employer's accrued lien. However, neither the WCJ nor the Board cited any legal authority supporting this rationale for denying Employer a credit for future payments. For the following reasons, we conclude that the WCJ and Board misapplied Section 319 in determining Employer's subrogation rights and liabilities.

In *Pendleton v. Workmen's Compensation Appeal Board (Congoleum Corp.)*, 155 Pa.Commonwealth Ct. 440, 625 A.2d 187 (1993), former President Judge Craig set forth the following straightforward mathematical rules to implement Section 319 in a fair and simple manner. Employer refers to this method as the "bureau method." Consistent with published opinions of this Court, we will refer to this method as the "gross method."

■ As provided in Section 319, an employer who pays workers' compensation is subrogated to the right of the employee against a third-party tortfeasor. When the claimant's recovery in the third-party action provides the employer with repayment of its accrued lien, the employer must bear its proportionate share of the costs expended to recover that amount. *Pendleton*. The employer is required to reimburse the claimant for the legal expenses attributable to the accrued lien at the time that the employer receives the lump sum liquidation of its accrued lien. *Id.*

■ Under the gross method, any balance of recovery is determined by deducting the accrued lien from the total recovery. *Id.* Those additional funds are to be treated as an advance payment of future compensation, thus, providing the employer with a "grace period." *Id.* The employer is required to reimburse the claimant for the costs attributable to the recovery of the amounts credited

to the future compensation payments. *Id.* The legal expenses attributable to the future compensation payments are to be paid in installments each week of the grace period. *Id.*

■ The gross method differs from the "net method," applied by our Supreme Court in *Rollins* and by this Court in *Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.)*, 126 Pa.Commonwealth Ct. 206, 559 A.2d 92 (1989), in the manner in which the balance of recovery is calculated. Under the net method, all costs of recovery, as well as the accrued lien, are deducted from the total recovery for purposes of determining the amount available as credit. *Rollins*. Under the net method, the employer receives a shorter grace period, but correspondingly, has no obligation to repay legal expenses during that time. As we noted in *Dasconio*, however, only the gross method takes account of the time value of money, by deferring repayment of the legal fees over the grace period. *Dasconio*. In *Rollins* and *Dasconio*, however, the parties failed to preserve any question relating to the methodology used by the agency. Here, as shown below, the WCJ determined the balance of recovery without first deducting all of the legal expenses from the gross recovery. As in *Pendleton*, the issue as to the appropriate methodology has been raised on appeal. As in *Pendleton*, we, therefore, apply the preferred gross method to this case.

■ We note that we find no basis for Claimant's assertion that the WCJ applied the net method. To the contrary, to arrive at a net recovery of $31,125.57, the WCJ evidently deducted $16,707.18, in the remaining legal fees, from a $47,832.75 balance of recovery. The $47,832.75 balance results from the subtraction of the accrued lien, $117,167.25, from the $165,000.00 total recovery. Had the WCJ applied the net method, the result would have been a negative balance of recovery, i.e., $165,000 less the total legal expenses, $57,610.95, and the accrued lien, $117,167.25, equaling − $9,778.20.

Although the WCJ properly based his calculation on a $47,832.75 balance of recovery, we find that the WCJ and Board erred: 1) in

failing to treat that balance as an advance payment of future compensation; and 2) in failing to attribute the remaining legal expenses, $16,707.18, to the prepaid future compensation.

■■■■ As previously stated, Section 319 specifically provides that any recovery in excess of the accrued lien shall be treated as an advance payment of the employer's future compensation obligation. Here, as in *Pendleton* and *Dasconio,* where no question has been raised at to whether the entire recovery of $165,000.00 is subject to subrogation by the employer, we will presume that any sum in excess of the accrued lien is available as a credit.[5] Employer's settlement of the accrued lien for $35,000.00 does not affect the calculation of the balance of recovery for purposes of determining Employer's credit for future compensation. *CNA Insurance Co. v. Workmen's Compensation Appeal Board (Romeo),* 134 Pa.Commonwealth Ct. 478, 578 A.2d 1375 (1990); *Dasconio.* Therefore, Employer is entitled to benefit from the balance of recovery, $165,000.00 less $117,167.25, equalling $47,832.75, to be applied to future installments by way of a grace period.

■■■■ Additionally, Section 319 requires the employer to share the burden of legal expenses in accordance with the benefit which it derives from the claimant's recovery in the third-party action. *McDevitt v. Terminal Warehouse Co.,* 346 Pa.Superior Ct. 186, 499 A.2d 374 (1985). Again, Employer's settlement of the accrued lien for $35,000.00 does not affect the calculation of Employer's proportionate share of the legal expenses. *See, e.g., CNA Insurance.* Here, the WCJ properly determined that Employer's share of the expenses attributable to the reimbursement of its accrued lien equals $40,903.77. The proportionate share of expenses is arrived at by dividing the accrued lien, $117,167.25, by the total recovery, $165,000.00, which equals 71%. Multiplying the total costs of recovery, $57,610.95, by 71% yields $40,903.77.

■■■■ However, in denying Employer a credit, the WCJ improperly deducted the remaining legal expenses, $16,707.18, from the balance of Claimant's recovery. Following *Pendleton,* Employer is to repay that sum, $16,707.18,[6] in weekly installments over the grace period. To determine the grace period, we divide the balance of recovery, $47,832.75, by Claimant's weekly compensation rate, $336.00, resulting in 142 weeks. *Pendleton.* We thus, divide $16,707.18 by 142 weeks, which equals $117.66 per week. As a result, we conclude that Employer is entitled to a grace period of 142 weeks during which Employer is to pay Claimant $117.66 per week as reimbursement for the legal expenses attributable to the recovery of each future payment.

Our calculations are set forth in the following schedule:

### DISTRIBUTION OF PROCEEDS OF THIRD–PARTY ACTION

Pursuant to Section 319 of the Act using the gross method described in *Pendleton.*

I  Proceeds of Third Party Action

| | | |
|---|---|---|
| Total Recovery (R) | $165,000.00 | |
| Less Total Accrued Lien (L) | $117,167.25 | (71% of R) |
| Balance of Recovery (B) | $ 47,832.75 | (29% of R) |

II  Distribution

A. Expenses of Recovery

| | | |
|---|---|---|
| Total Expenses (E) | $ 57,610.95 | |
| Expenses attributable to Accrued Lien | $ 40,903.77 | (71% of E) |

5. We note also that Employer points to extensive correspondence in the record relating to Employer's settlement negotiations, in which the parties looked to the entire recovery in calculating a credit for future payments.

6. Here, where (regardless of the settlement) Employer is benefitting from the entire recovery in the third-party action, the costs attributable to the grace period equal the total costs of recovery, $57,610.95, less the costs attributable to the accrued lien, $40,903.77, or $16,707.18. In other words, following the *Pendleton* formula, the costs attributable to the grace period equal 29% of the total costs (i.e., balance of recovery, $47,832.75, divided by total recovery, $165,000.00, equals 29%; 29% of total costs, $57,610.95, equals $16,707.18).

Expenses attributable to Balance of Recovery ................ $ 16,707.18   (29% of E)

B. Net Lien
 Total Accrued Lien .............................. $117,167.25
   Less expenses attributable to Accrued Lien ..... $  40,903.77
 Net Lien (satisfied by $35,000.00) ............................ $ 76,263.48

C. Credit
 Balance of Recovery (B) ........................ $ 47,832.75
 Weekly Compensation Rate (C) ................. $   336.00  /wk
 Grace period (B divided by C) ................. 142  weeks
 Reimbursement of Expenses attributable to Balance   $117.66  /week
 of Recovery ($16,707.18 divided by 142 weeks).

Based on our calculations, therefore, we conclude that the WCJ and Board erred in finding that Employer owes Claimant $38,943.40 in past due and delinquent compensation with $226.00 additionally per week, plus interest. However, as found by the WCJ, as of November 19, 1984, Employer paid Claimant at a rate of $117.60 most weeks but varied the rate in the remaining weeks. Therefore, we remand for a calculation of any adjustment necessary to account for additional compensation payable.

■ Further, we hold that the WCJ and Board erred in directing Employer to pay Claimant $40,903.77 in counsel fees and costs, plus interest, attributable to the accrued lien. The undisputed facts show that Employer's accrued lien of $117,167.25 less Employer's share of the legal expenses attributable to that lien, $40,903.77, resulted in a net lien to Employer of $76,263.48. Employer asserts that it was the net lien which it settled for $35,000.00; therefore Employer's settlement took account of Claimant's legal fees attributable to the accrued lien. The WCJ determined, however, that there was substantial, credible evidence that Employer had settled its lien of $117,167.25 for $35,000.00. (WCJ's December January 31, 1994 Opinion, Conclusion of Law No. 2.) The WCJ did not identify the "substantial, credible" evidence supporting this conclusion and made no reference to the legal fees. Our review of the record shows that Gary Connor, Assistant Manager of the Casualty Claims Division of Donegal Mutual, Employer's insurance carrier, testified that Donegal had not agreed to pay back to Claimant more money that it had received. (R.R. at 170a.) Nonetheless, under the facts as found by the WCJ, Employer would have agreed to pay Claimant $40,-903.77 in legal fees for a $35,000.00 settlement of a $117,167.25 lien, with no credit for future compensation payable. We cannot conclude that such a result is a reasonable expression of the parties' intent. Accordingly, we conclude that the WCJ improperly subjected Employer to double payment of the legal fees in ordering Employer to pay Claimant an additional $40,903.77.

■ We also hold that the WCJ and Board erred in imposing against Employer a 20% penalty for a violation of the Act pursuant to Section 435. Section 435 of the Act, 77 P.S. § 991, empowers the Department, the Board or the Court to impose a penalty of 10% of the amount awarded and interest accrued. Such penalty may be increased to 20% in cases of unreasonable or excessive delays. 77 P.S. § 991. This Court has held that a violation of the Act or regulations promulgated thereunder must appear on the record. *DeVore v. Workmen's Compensation Appeal Board (Sun Oil Co.)*, 165 Pa.Commonwealth Ct. 615, 645 A.2d 917, *petition for allowance of appeal denied*, 540 Pa. 606, 655 A.2d 993 (1994). Additionally, we have held that even where a violation of the Act is apparent on the record, the penalties under the Act are not automatic, but are left to the discretion of the WCJ.

Under factual circumstances analogous to those before us, we affirmed the denial of a penalty in *DeVore*. In *DeVore*, the employer unilaterally reduced its payments to the claimant before the referee had issued a decision finding a right to subrogation. The referee, however, ultimately ordered the employer to make payments consistent with the schedule that the employer had adopted. Therefore, the referee did not impose a pen-

alty on the employer. We found no reason to reverse that decision.

Here, the WCJ imposed a 20% penalty based on Employer's unilateral change in Claimant's payment schedule and Employer's excessive delay in paying Claimant past due compensation. Here, as in *DeVore*, Employer did alter Claimant's compensation rate without the benefit of a Supplemental Agreement or a decision of a WCJ finding a right to subrogation.[7] We have, however, determined that Employer is obligated to make payments substantially consistent with the schedule adopted by Employer. Specifically, under our calculations, Employer is obligated to pay Claimant $117.66 per week during the grace period, whereas Employer had paid Claimant at a rate of $177.60 per week in most weeks prior to this action. *See* Finding of Fact No. 2, *supra* note 3, at 3. Following the rationale of *DeVore*, we conclude that the WCJ abused his discretion in imposing a penalty for a violation of the Act when Employer's payment schedule substantially complies with the Act.

Additionally, we hold that the WCJ and Board erred in awarding Claimant attorney's fees and costs for a "non bona fide" contest. Section 440 of the Act provides that where an insurer has contested liability, the claimant is entitled to an award of attorneys' fees and costs, unless the employer has established a reasonable basis for the contest. 77 P.S. § 996. We question whether this dispute, relating to the amount of compensation owing, even falls within the purview of Section 440. Further, we have resolved the matter in favor of Employer. We are thus compelled to conclude that Claimant is not entitled to an award of fees and costs under that section.

In summary, we hold that the WCJ and Board erred in ordering Employer to pay the following: $40,903.77 as its share of counsel fees and costs of Claimant's third-party ac-

tion; $38,943.40 in past due and delinquent compensation plus $226.00 additionally per week; 20% of the compensation as a penalty for unreasonable delay; 10% interest on the foregoing because of late payments of compensation; and 20% of all compensation as counsel fees for a non-bona fide contest. Therefore, we reverse the Board's order and remand this case to the Board for an order directing distribution consistent with this opinion.

### ORDER

**AND NOW,** this 24th day of August, 1995, the December 9, 1994 decision of the Workmen's Compensation Appeal Board is reversed. We order that Respondents P & R Welding & Fabricating and the Donegal Mutual Insurance Company are entitled to a grace period of 142 weeks, commencing as of November 19, 1989, during which Respondents shall pay to Claimant $117.66 per week as reimbursement of the legal expenses attributable to the grace period. We remand this case to the Board for revised calculations in accordance with this opinion.

Jurisdiction relinquished.

---

7. Although Employer implies, in its brief, that the parties had adopted a Supplemental Agreement, our review of the record reveals that the WCJ properly found that Employer had altered its schedule of payments without the benefit of any final agreement. Specifically, the record contains correspondence between the parties showing that the parties had clearly agreed to settle Employer's accrued lien for $35,000.00.

The correspondence also shows that the parties agreed that Employer is entitled to a credit for future compensation and is obligated to reimburse Claimant for legal fees. However, the correspondence shows that the parties never reached an agreement as to the exact amount available as a credit or owing as reimbursement of legal fees.