IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Medical Revenue Associates,           :
                    Petitioner        :
                                      :
          v.                          :
                                      :
Sue Ellen Kanefsky (Workers'          :
Compensation Appeal Board),           :     No. 1410 C.D. 2021
                    Respondent        :     Submitted: September 30, 2022


BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                  FILED:  March 22, 2023


          Medical Revenue Associates (Employer) petitions for review of the
November 17, 2021, decision of the Workers' Compensation Appeal Board (Board).
The Board affirmed (as amended) the May 20, 2021, decision of the Workers'
Compensation Judge (WCJ), who granted a penalty petition filed by Sue Ellen
Kanefsky (Claimant).  Upon review, we affirm.


**I. Procedural & Factual Background**

          The underlying facts are not in dispute.  Claimant, a medical biller,
sustained a disabling work-related injury when she fell on black ice in Employer's

parking lot on January 9, 2015.[1]  Reproduced Record (R.R.) at 5a.  She filed a claim petition in 2017, which Employer contested.  *Id*. at 6a.  A WCJ granted her claim petition in a January 16, 2019, decision (*WCJ I*) that awarded ongoing temporary total benefits of $475.50 per week as of January 19, 2015.  R.R. at 108a.  The WCJ also granted Claimant's penalty petition based on Employer's failure to timely file responsive documents with the Bureau of Workers' Compensation (Bureau) when it had actual notice that Claimant had been injured.[2]  *Id*. at 29a & 108a.  The WCJ awarded Claimant 50% over and above her compensation benefits through the date of decision.  *Id*. at 108a.  Employer did not appeal *WCJ I*.  *Id*. at 43a & 95a.

Shortly thereafter, on January 22, 2019, Employer's insurer drafted a third-party settlement agreement relating to Claimant's $650,000 resolution of a third-party claim arising from the January 2015 incident.[3]  R.R. at 2a & 101a.  The agreement, which was never finalized because Claimant did not sign it, did not include an accrued lien amount based on wage benefit payments already made by

---

[1] When Claimant slipped and fell, she sustained severe fractures to her right thigh, knee, foot and ankle.  Reproduced Record (R.R.) at 5a.

[2] When the incident occurred, Claimant's supervisor came out to the accident scene and Claimant was taken to the hospital in an ambulance.  R.R. at 5a.  Pursuant to the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710, once an employer is on notice of an injury, the employer must file a Notice of Compensation Payable, Notice of Temporary Compensation Payable, or Notice of Compensation Denial within 21 days or be subject to a penalty.  *Brutico v. Workers' Comp. Appeal Bd. (US Airways, Inc.)*, 866 A.2d 1152, 1155 (Pa. Cmwlth. 2004) (citing Section 406.1(a) of the Act, 77 P.S. § 717.1(a), added by the Act of February 8, 1972, P.L. 25).

[3] The third-party settlement agreement is a boilerplate form supplied by the Bureau; when signed by both employer and claimant, it memorializes the employer's subrogation rights vis-à-vis the claimant's third-party recovery.  *Whitmoyer v. Workers' Comp. Appeal Bd. (Mountain Country Meats)*, 186 A.3d 947, 956-58 (Pa. 2018).  The form includes a formula to calculate the employer's share of the litigation expenses for the third-party recovery as well as a "grace period" during which the employer may reduce or abstain from benefits payments in order to recoup amounts it paid the claimant prior to the third-party settlement.  *Id*. at 956-57.

Employer. *Id*. at 2a. The agreement indicated that after deduction of attorneys' fees and litigation expenses from the third-party recovery, $370,988.66 would remain against which Employer could secure a subrogation interest. *Id*. at 2a. Employer's calculations indicated that it would be responsible for 42% of Claimant's future benefits until its subrogation lien, the amount of which was unspecified in the document, was fully recovered. *Id*.

The parties agreed that Employer could refrain from payment of benefits based on *WCJ I* until after a voluntary mediation concluded. R.R. at 43a. The mediation in early March 2019 was not successful. *Id*. Claimant, in the apparent belief that the previous agreement allowing Employer to avoid payment pending the mediation had elapsed, immediately filed a second penalty petition (Claimant's first asserting nonpayment) on March 8, 2019, alleging that Employer failed to pay benefits in accordance with *WCJ I*. *Id*. at 34a & 108a.

A payment log in evidence indicates that in April 2019, Employer began making payments to Claimant but unilaterally deducted amounts representing its subrogation interest. Certified Record (C.R.) at 175.[4] On April 15, 2019, Employer filed petitions formally asserting its subrogation interest without indicating a specific amount that it had expended or sought to recover. R.R. at 37a & 108a.

On May 15, 2019, the WCJ issued an interlocutory order (*WCJ II*) stating that as of that date, Employer had not paid Claimant all of the benefits due in accordance with *WCJ I*. R.R. at 46a. The WCJ directed Employer to pay Claimant's due and outstanding benefits, but deferred payment of the penalty outstanding from *WCJ I* until the pending petitions were resolved. *Id*. The WCJ acknowledged that

---

[4] Page references in the Certified Record (C.R.) are to electronic pagination.

3

Employer had filed petitions asserting a subrogation interest, but did not expressly authorize Employer to deduct any amounts for subrogation from Claimant's disability payments. *Id*. at 45a-47a.

On June 20, 2019, during the litigation of Claimant's first penalty petition for nonpayment and Employer's subrogation petitions, Claimant filed a third penalty petition (her second asserting nonpayment) alleging that Employer still had not paid Claimant all of the past benefits due and had wrongly reduced Claimant's ongoing benefits unilaterally. R.R. at 48a. Claimant asserted that Employer therefore failed to comply with *WCJ II* and was subject to additional penalties. *Id*.

In the consolidated litigation on Claimant's first and second penalty petitions for nonpayment and Employer's subrogation petitions, Employer's adjuster testified that the total amount due to Claimant based on *WCJ I* was about $188,000, with $153,000 due to Claimant in wage benefits and $35,000 in attorney's fees to her counsel.[5] R.R. at 62a. He noted that in early April 2019, a month after Claimant filed her first penalty petition for nonpayment, Insurer issued its first payment to Claimant, a lump sum of $71,653.68 for wage loss benefits through April 2, 2019. R.R. at 61a. To reflect its subrogation interest, Employer unilaterally reduced that payment as well as ongoing weekly payments to Claimant even though Claimant had never signed the third-party settlement agreement.[6] *Id*. The adjuster admitted

---

[5] This summary of the adjuster's testimony is adapted from the WCJ's subsequent decision on Claimant's first and second penalty petitions for nonpayment and Employer's subrogation petitions (*WCJ III*). The original transcript of the adjuster's testimony is not in the record of this matter, which is limited to the penalty petition at issue in this appeal.

[6] Claimant's exhibit in support of her subsequent November 2020 penalty petition, which the WCJ relied on in the matter underlying this appeal, reflected that after deduction of attorney's fees from her weekly benefit rate of $475.50, she should have received $380.40 per week. C.R. at 87-88. However, after Employer's unilateral deductions for its subrogation interest, it usually paid her only $163.28 per week. *Id*. Employer made these reduced payments through September 2020, when it began paying $380.40 per week. *Id*. at 88.

he took the agreement at face value and did not seek to have Claimant sign it; he also did not secure the third-party settlement distribution documents from Claimant's counsel in order to confirm his calculations. *Id*. at 62a.

On July 1, 2020, the WCJ issued a decision (*WCJ III*) resolving Employer's subrogation petitions and Claimant's first and second penalty petitions for nonpayment. R.R. at 56a-66a. *WCJ III* noted that the third-party settlement agreement drafted by Employer, which indicated the amount of Claimant's recovery against which Employer could subrogate, had not been signed by Claimant or finalized. *Id*. at 60a. *WCJ III* also concluded that Employer had not fully paid Claimant's disability benefits pursuant to *WCJ I*; therefore, Employer had not "perfected" its subrogation interest in Claimant's third-party recovery, even though it had been unilaterally deducting subrogation amounts from her weekly benefits. *Id*. at 63a & 109a. Consequently, *WCJ III* denied Employer's subrogation petitions, ordered Employer to pay past due benefits as ordered in *WCJ I* as well as ongoing benefits, both without a subrogation deduction, and granted Claimant's first and second penalty petitions for nonpayment (imposing further 50% penalties on all outstanding amounts owed). *Id*. at 66a & 109a.

Employer appealed *WCJ III* to the Board and requested supersedeas of all payments ordered by the WCJ, including penalties and all back due and ongoing disability benefits. R.R. at 83a-84a. The Board issued a supersedeas order in August 2020 stating that Employer could defer payment of any outstanding penalties[7] pending the Board's merits decision, but denying Employer's request "in all other respects." *Id*. at 89a. Employer began paying Claimant's benefits without

---

[7] The order did not specify whether this pertained only to Claimant's first and second penalty petitions for nonpayment, which were granted in *WCJ III*, or included the still unpaid penalty from *WCJ I* concerning Employer's failure to timely issue Bureau documents.

5

subrogation deductions in September 2020, but did not pay Claimant any of the amounts it previously deducted, despite having been ordered to pay Claimant without deductions in *WCJ I* (before it asserted subrogation rights) and *WCJ II* (while its subrogation petitions were pending), and *WCJ III*, which it was appealing. *See* C.R. at 172.

While Employer's appeal of *WCJ III* was pending before the Board, Claimant filed another penalty petition on November 5, 2020, her third for nonpayment and the basis of this appeal. Claimant asserted that Employer had still failed to pay the full amount of benefits owed as directed by the WCJ's prior decisions and the Board's August 2020 supersedeas order.[8] R.R. at 103a & 229a.

Employer argued that Claimant's November 2020 penalty petition was precluded because there was no "new" misconduct alleged against Employer since the alleged payment defects arising in 2019 that gave rise to *WCJ III*, and because *WCJ III* was still pending on appeal with the Board.[9] R.R. at 110a-11a. The WCJ rejected this argument in a May 20, 2021, decision (*WCJ IV*), which underlies this appeal. *WCJ IV* concluded that Claimant had successfully asserted new misconduct, specifically that Employer failed to comply with the Board's August 2020 supersedeas order directing it to pay Claimant any due and owing outstanding disability benefits pending the merits outcome of the appeal of *WCJ III*. R.R. at 111a. *WCJ IV* interpreted the Board's supersedeas order as allowing Employer to

---

[8] By this time the original WCJ had retired and a new WCJ was assigned to the case. R.R. at 113a.

[9] Employer cited *Grasha v. Workmen's Compensation Appeal Board (School District of Pittsburgh)*, 413 A.2d 771 (Pa. Cmwlth. 1980) and *Gienec v. Workers' Compensation Appeal Board (Palmerton Hospital)*, 130 A.3d 154 (Pa. Cmwlth. 2015), which *WCJ IV* noted "stand for the propositions that a party cannot relitigate an issue when the same issue is pending on appeal and that a petition is premature if it is dependent on the outcome on appeal of the initial claim." R.R. at 110a.

withhold payment of the previously ordered penalties but in all other respects upholding the status quo, which pursuant to *WCJ I*, *WCJ II*, and *WCJ III* required Employer to pay Claimant all due benefits going back to *WCJ I*. *Id*. at 109a. The WCJ accepted Claimant's calculations that Employer still owed $57,775.32 in outstanding disability benefits pursuant to and since *WCJ I*.[10] *Id*. at 110a. In light of Employer's failure to comply with the Board's August 2020 supersedeas order directing Employer to pay those sums, *WCJ IV* imposed another 50% penalty against Employer. *Id*. at 111a-112a.

On June 3, 2021, just after *WCJ IV* was issued, the Board issued its merits decision (*Board I*) on Employer's appeal of *WCJ III*. R.R. at 95a & 109a. The Board first addressed *WCJ III*'s determination that Employer failed to secure its subrogation interest. *Id*. at 99a. The Board stated that Claimant settled her third-party claim in August 2018 and that all parties were aware of that settlement when *WCJ I* was issued, even though that decision did not address Employer's subrogation rights.[11] *Id*. at 101a. The Board concluded that because an employer's subrogation rights are both automatic and absolute, once Claimant settled her third-party case, Employer's interest vested; therefore, the WCJ had no basis in *WCJ III* to deny

---

[10] *WCJ IV* calculated that the gross amount due to Claimant was $69,454.30; after subtracting Claimant's counsel's fees of $11,678.98 on that amount, the net amount due to Claimant was $57,775.32. R.R. at 110a.

[11] Generally, an employer must assert its potential right to subrogation during the original claim petition litigation even if it contests the petition; failure to do so may result in waiver of the right. *Boeing Helicopters v. Workers' Comp. Appeal Bd. (Cobb)*, 713 A.2d 1181, 1186 (Pa. Cmwlth. 1998). *Board I* indicated that Claimant's third-party matter settled on August 3, 2018. R.R. at 101a. The record for the underlying claim litigation was still open at that time, since Employer's doctor did not give his deposition until September 26, 2018. *Id*. at 4a. It is unclear why Employer did not raise its potential right to subrogation during the initial claim litigation that led to *WCJ I*. However, as Claimant did not argue waiver in response to Employer's April 2019 petition asserting subrogation rights and *WCJ III* did not find waiver *sua sponte*, we assume that Employer preserved its right to subrogation in this matter.

Employer's petitions asserting those rights. *Id*. The Board therefore reversed *WCJ III* in that respect and remanded to the WCJ to determine the amount of Employer's subrogation lien. *Id*. at 102a.

*Board I* also vacated *WCJ III*'s award of penalties. R.R. at 102a. The Board noted that its decision upholding Employer's subrogation interest would impact all benefit amounts due to Claimant as far back as *WCJ I*. *Id*. at 101a. The WCJ was therefore directed on remand to recalculate those amounts, including disability benefits, and any outstanding penalties and attorneys' fees. *Id*.

On November 17, 2021, the Board issued its decision (*Board II*) resolving Employer's appeal of *WCJ IV* concerning Claimant's November 2020 penalty petition. The Board affirmed, agreeing with *WCJ IV* that Employer failed to comply with the Board's August 2020 supersedeas order. R.R. at 231. However, the Board acknowledged its prior decision in *Board I* upholding Employer's subrogation interest. *Id*. at 203a. The Board therefore amended the *WCJ IV* order to reflect that the penalty would not be based on the calculations in *WCJ IV*, which did not account for Employer's subrogation interest. *Id*. Instead, the penalty amount would be based on the remand ordered in *Board I*, which directed the WCJ to finalize Employer's subrogation interest and recalculate the benefits still due to Claimant. *Id*.

Employer has appealed *Board II* to this Court.

## II. Issues

Employer argues that Claimant's November 2020 penalty petition (alleging that Employer failed to comply with the Board's supersedeas order in the appeal of *WCJ III*) should have been dismissed as precluded because it raised

8

identical issues to those still pending at that time on appeal with the Board in *WCJ III*, specifically whether Employer should have been subject to a penalty for its reduction of payments in anticipation of subrogation. Employer's Br. at 13-17. Employer maintains that because *Board I* ultimately validated its subrogation interest and vacated the penalties in *WCJ III* for Employer's unilateral subrogation deductions from Claimant's disability benefits, there was no basis to support the imposition in *WCJ IV* of a penalty for Employer's failure to comply with the Board's August 2020 supersedeas order. *Id*. at 17. Employer adds that because it began making payments without deductions in September 2020, there was no "new" misconduct to support Claimant's November 2020 penalty petition. *Id*. at 18.

Claimant responds that her November 2020 penalty petition was correctly granted because Employer continued to reduce her benefits even after it had been ordered not to do so in *WCJ II* and *WCJ III*. Claimant's Br. at 3. Claimant adds that even though Employer ultimately prevailed on the merits of its subrogation interest in *Board I*, the penalty in *WCJ IV* was valid because Employer violated the Board's August 2020 supersedeas order in the appeal of *WCJ III*, which had directed it to pay Claimant's past due disability benefits without deductions. *Id*. at 5.

Both sides argue this appeal on the basis of general precedent concerning penalties and the inability of a party to petition the WCJ anew when the same issue is pending on appeal in a previous litigation phase. However, that question is intertwined with the underlying issue of whether an employer that asserts a subrogation interest in a claimant's third-party recovery may unilaterally reduce the claimant's disability benefits without subjecting itself to a penalty.

9

### III.  Discussion

Section 435(d)(i) of Pennsylvania's Workers' Compensation Act (Act),[12] 77 P.S. § 991(d)(i), provides that an employer may be penalized up to 50% of the awarded amount for its failure to comply with the Act or its supporting regulations in cases of unreasonable or excessive delays.  *City of Phila. v. Workers' Comp. Appeal Bd. (Andrews)*, 948 A.2d 221, 228 (Pa. Cmwlth. 2008).  A claimant who files a penalty petition must first meet an initial burden to prove with evidence that a violation of the Act occurred.  *Id*.  Thereafter, the burden shifts to the employer to prove that it did not violate the Act.  *Id*.  The decision to impose a penalty, as well as the amount of such a penalty, is within the WCJ's discretion and will not be disturbed on appeal absent an abuse of that discretion.  *Id*.  However, within this context, "not every violation of the Act requires, as a matter of law, the automatic imposition of a penalty."  *Kurpiewski v. Workers' Comp. Appeal Bd. (Caretti, Inc.)*, 202 A.3d 870, 889 (Pa. Cmwlth. 2019).

Generally, Section 430 of the Act requires that an employer must pay benefits as awarded unless there is an order from the WCJ or Board or an agreement between the parties that relieves the employer of its obligation.  77 P.S. § 971(b); *City of Phila.*, 948 A.2d at 228.  An employer's unilateral cessation or failure to pay a claimant's benefits therefore triggers the penalty provisions of the Act.  *Id*. at 229.  Where the employer appeals a WCJ's award of benefits, the mere filing of the appeal does not stay the employer's obligation to pay in the absence of a supersedeas order

---

[12] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.  Section 435(d)(1) was added by Section 3 of the Act of February 8, 1972, P.L. 25.

suspending that obligation during the pendency of the appeal.[13] *Thomas v. Workers' Comp. Appeal Bd. (Delaware Cnty.)*, 746 A.2d 1202, 1205 (Pa. Cmwlth. 2000). When the Board denies a supersedeas request "in all material respects," the employer's obligation to pay benefits remains "constant and unchanging." *Gardner v. Workers' Comp. Appeal Bd. (Genesis Health Ventures)*, 888 A.2d 758, 763 n.6 (Pa. 2005).

An employer's subrogation right is, by law, absolute and automatic. *Fortwangler v. Workers' Comp. Appeal Bd. (Quest Diagnostics)*, 113 A.3d 28, 33 (Pa. Cmwlth. 2013). Nevertheless, there is no exception for subrogation in our law requiring employers to pay benefits in the absence of an agreement or order (such as in the supersedeas context) allowing them to evade that obligation. *City of Phila.*, 948 A.2d at 228. As such, an employer generally may not engage in "self-help" to reduce or withhold benefits payments. *City of Phila.*, 948 A.2d at 228. Whether noncompliance in this regard warrants a penalty, however, is less straightforward.

In *DeVore v. Workmen's Compensation Appeal Board (Sun Oil Co.)*, 645 A.2d 917 (Pa. Cmwlth. 1994), the employer filed a petition asserting subrogation rights against the claimant's third-party recovery, and during litigation of that petition, it unilaterally reduced the claimant's disability payments. *Id*. at 918. The WCJ, then known as a referee, granted the employer's petition, calculated a reduced payment in accordance with the employer's subrogation interest, and denied the claimant's penalty petition; the Board affirmed. *Id*. This Court affirmed the

---

[13] To the extent that an employer is ultimately found to have overpaid benefits, recovery is available from the Supersedeas Fund. *H.A. Harper Sons, Inc. v. Workers' Comp. Appeal Bd. (Sweigart)*, 84 A.3d 363, 366 (Pa. Cmwlth. 2014) (explaining that the General Assembly created the Fund for the purpose of "reimbursing, under prescribed circumstances, an employer who has been ordered to pay workers' compensation benefits that are later determined not to be owed. . . . The Fund injects fairness into a system that requires an employer to pay a disputed award of benefits after the award is appealed.").

11

Board, concluding that because the WCJ ultimately ordered the employer to pay reduced benefits at the same rate the employer had been paying them unilaterally, the WCJ did not abuse his discretion in declining to impose a penalty. *Id*. at 920.

In *P. & R. Welding & Fabricating v. Workmen's Compensation Appeal Board (Pergola)*, 664 A.2d 657 (Pa. Cmwlth. 1995), the employer claimed an accrued lien for past benefits and medical expenses paid prior to the claimant's third-party settlement. *Id*. at 659. The parties settled that lien. *Id*. Thereafter, the employer unilaterally reduced the claimant's ongoing disability payments. *Id*. The WCJ imposed a penalty on employer, which the Board affirmed. *Id*. at 660. Relying on *DeVore*, this Court reversed the penalty. *Id*. at 663-64. Although the employer had acted improperly, we concluded that based on the calculations and taking the employer's deductions into account, the employer had actually overpaid the claimant. *Id*. at 664. Given those facts, we concluded that "the WCJ abused his discretion in imposing a penalty for a violation of the Act when [the employer's] payment schedule substantially complies with the Act." *Id*.

In *Griffis v. Workers' Compensation Appeal Board (Albert Einstein Healthcare Network)* (Pa. Cmwlth., No. 280 C.D. 2019, filed July 15, 2020), 2020 WL 3989478 (unreported), the employer unilaterally suspended the claimant's benefits in order to recoup its subrogation lien. *Id*., slip op. at 34, 2020 WL 3989478, at *15. Relying on *DeVore* and *P. & R. Welding*, we upheld the WCJ's denial of the claimant's penalty petition. *Id*. Even though the employer had technically violated the Act, a penalty was not warranted because the WCJ ultimately suspended the claimant's benefits on the same basis as that on which the employer had withheld them. *Id*.

12

In *Boeing Helicopters v. Workers' Compensation Appeal Board (Cobb)*, 713 A.2d 1181 (Pa. Cmwlth. 1998), the WCJ imposed a penalty against the employer for unilaterally deducting subrogation amounts from the claimant's disability benefits without ever formally asserting subrogation rights before the WCJ; the Board affirmed. *Id*. at 1183. This Court affirmed, concluding that although the claimant had signed an agreement commemorating the employer's subrogation rights, the agreement did not include the specific amount the employer was claiming or any terms concerning how the amount was to be recouped. *Id*. at 1186. Moreover, the agreement itself was not filed with the WCJ and the proper amount and terms that would arise from the agreement were never established by the WCJ even if the amount withheld by the employer may ultimately have been correct. *Id*. This Court, in a 5-2 *en banc* decision, without recourse to *DeVore* or its progeny, upheld the WCJ's penalty as valid. The employer may have correctly calculated the amount at issue, but its unilateral withholding of payments in the absence of an assertion (much less approval) of its subrogation rights before the WCJ violated the Act. *Id*.

As the above cases reflect, an employer's decision to unilaterally reduce a claimant's benefit payments in order to satisfy its subrogation lien technically violates the Act and may be subject to a penalty. In these circumstances, we have consistently treated the employer's subrogation calculations as at least relevant to evaluating its overall conduct. An employer may be able to avoid a penalty as in *DeVore* or have a penalty reversed as in *P. & R. Welding* if a WCJ ultimately comes to the same conclusion as the employer in terms of the amount and terms of recoupment. However, where an employer unilaterally reduces payments and makes the correct calculations but commits additional misconduct, such as failing to

13

properly assert subrogation rights so that the WCJ may properly calculate amounts due to the claimant, a penalty is more likely to be upheld, as in *Boeing Helicopters*. In any event, the matter is fact-sensitive and within the WCJ's discretion, and the abuse of discretion standard sets a high bar for action by the reviewing court.

Here, *WCJ IV* acknowledged the procedural complexity of this matter but distilled the issue in Claimant's November 2020 penalty petition to the sole question of whether Employer failed to comply with the Board's August 2020 supersedeas order directing Employer to pay all due and owing disability benefits without deductions pending the Board's merits determination on *WCJ III*. R.R. at 83a-84a, 89a & 111a. *WCJ IV* interpreted the Board's supersedeas order, which allowed Employer to withhold penalty payments but denied Employer's request "in all other respects," as restoring the status quo in which Employer had been ordered in *WCJ I*, *WCJ II,* and *WCJ III* to pay Claimant all benefits due and owing without deductions, even though *WCJ III* was pending on appeal. *Id*. at 109a. In so deciding, *WCJ IV* rejected Employer's position that Claimant's November 2020 penalty petition for nonpayment (based on the supersedeas order in the appeal of *WCJ III*) should have been precluded while that appeal, which pertained to the same issues--Employer's subrogation rights and the prior imposition of penalties for its deduction of subrogation amounts from its payments--was still pending before the Board and at the time of *WCJ IV*, had not yet been decided. *Id*. at 111a. Noting in *WCJ IV* that Employer presented no explanation other than preclusion for its failure to pay back due benefits in response to the Board's supersedeas order in the *WCJ III* appeal, the WCJ granted Claimant's third penalty petition for nonpayment. *Id*.

The Board's decision on appeal here, *Board II*, affirmed the penalty award in *WCJ IV*, modifying it only to direct recalculation of the proper amounts

14

based on *Board I*, which upheld Employer's subrogation interest and remanded for calculation of the amount of that interest. *Id*. at 231a-32a. *Board II* stated that its affirmance of the *WCJ IV* penalty was based on Employer's "failure to pay indemnity benefits *due when the Board denied supersedeas*" in August 2020. *Id*. at 231a (emphasis added). This clearly pertained to unpaid amounts deducted unilaterally by Employer in anticipation of its subrogation interest prior to its appeal of *WCJ III*.

According to undisputed payment logs in evidence, Employer began paying Claimant without deductions in September 2020 after the Board's August 2020 supersedeas order in the appeal of *WCJ III*. C.R. at 88. However, Employer did not pay Claimant the amounts it had previously deducted from her benefits payments, in the apparent belief that its subrogation claim and right to reduce payments would ultimately be vindicated. This was contrary to the Board's supersedeas order, which allowed Employer to defer payment of previously imposed penalties, but denied its request "in all other respects." *Id*. at 103. As posed, the Board's supersedeas order effectively directed Employer to pay in compliance with the status quo prior to its appeal of *WCJ III*. *Gardner*, 888 A.2d at 763 n.6.

At the time the Board issued its supersedeas order in August 2020, Employer had been ordered in *WCJ I*, *WCJ II*, and *WCJ III* to pay Claimant the full amount due without subrogation deductions. That obligation was not negated even though Employer appealed *WCJ III* and maintained that it should not have been penalized for asserting and acting on its subrogation rights. Rather than paying upfront and seeking reimbursement from the Supersedeas Fund after the fact, Employer assumed the risk that if it did not pay Claimant back for its previous deductions, it would be subject to a penalty. *See City of Phila.*, 948 A.2d at 228. In

15

that regard, Employer at least technically violated the Act, as *WCJ IV* concluded. R.R. at 111a.

This does not, however, end our inquiry into the imposition of a penalty in *WCJ IV*. As noted, a technical violation of the Act need not always result in a penalty. *Kurpiewski*, 202 A.3d at 889. The above-cited cases reflect that an employer's calculations, both the calculated risk of a penalty for nonpayment and the actual calculations of its subrogation interest, matter in this inquiry. An employer's unilateral deduction of anticipated subrogation amounts from a claimant's disability payments may be excused from penalization when the amounts and method of deduction are ultimately approved by a WCJ. *See P. & R. Welding*, 664 A.2d at 663-664. Here, whether Employer is subject to a penalty solely for unilaterally deducting subrogation amounts could arguably depend, at least in part, on the outcome of the remand in *Board I* to determine the proper amount of benefits due to Claimant as well as Employer's subrogation lien.

However, imposition of a penalty is always within the WCJ's discretion, and in the context of an employer's unilateral subrogation deductions, we have upheld penalties where the WCJ determined some additional misconduct on the employer's part, even if the employer's calculations were ultimately correct. *See Boeing Helicopters*, 713 A.2d at 1186. Here, *WCJ IV* found that Employer violated the Board's August 2020 supersedeas order by failing to pay Claimant the back due amounts Employer had deducted from Claimant's benefits, which had also been ordered in the previous WCJ opinions. R.R. at 111a. Claimant's payment logs following issuance of the supersedeas order, which Employer did not dispute, established the nonpayment of those back due amounts. Employer's conduct here was therefore more egregious than in *P. & R. Welding*, where the employer

16

unilaterally deducted subrogation amounts in technical violation of the Act, but did not disobey repeated orders specifically directing it to repay the deducted amounts. Whereas there may have been a basis to reverse the WCJ's penalty in that case, we find no similar mitigating circumstances here. *WCJ IV* therefore did not abuse discretion by imposing the penalty.

## IV. Conclusion

In light of the foregoing, the order of the Board is affirmed.


_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Medical Revenue Associates,      :
                 Petitioner     :
                                :
           v.                 :
                                :
Sue Ellen Kanefsky (Workers'    :
Compensation Appeal Board),    :    No. 1410 C.D. 2021
              Respondent   :

## O R D E R

AND NOW, this 22nd day of March, 2023, the November 17, 2021, order of the Workers' Compensation Appeal Board (Board) is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge